# The Postal Telegraph Cable Company

## *v.*

## Charles D. Lathrop *et al.*

*Filed at Ottawa January 21, 1890.*

1. Telegraphy—*mistake in transmission—liability of the company.* In order to charge a telegraph company with liability for damages growing out of its neglect to correctly transmit a dispatch ordering the purchase or sale of a certain commodity, it is not necessary that the message should, on its face, disclose the nature of the business, so that the operator may understand its meaning as to the article, quantity, quality and price. If enough appears in the message to show that it relates to a commercial business transaction between the correspondents, it will be sufficient to charge the company with damages resulting from its negligent transmission.

2. Where a message as written, read in the light of well-known usage in commercial correspondence, reasonably informs the operator that the message is one of business importance, and discloses the transaction as far as is necessary to accomplish the purpose for which it is sent, the company should be held liable for all the direct damages resulting from a negligent failure to transmit it as written, within a reasonable time, unless such negligence is in some way excused.

3. A dealer in teas and coffees in Chicago had considerable dealings in New York City, through a broker there, and had frequently sent and had orders filled by such broker. In June he sent this message: "Please buy, in addition to thousand August, one thousand cheapest month ; " also, "Put stop order on five thousand December, at seventeen cents." The numbers called for so many sacks of coffee. When received at New York the dispatches read : "Please buy in addition two thousand August, one thousand cheapest month ;" and the other, "Put stop order on five thousand December, at seventy cents :" *Held,* that the telegraph company was liable to the sender of the message for the damages he sustained by reason of the mistake in the transmission.

4. Appeals—*reviewing the evidence—opinion of Appellate Court, as showing its findings.* Sections 87 and 89 of the Practice act, (chap. 116,) prohibit this court from re-examining controverted questions of fact passed upon by the Appellate Courts, except in certain enumerated cases, and this court may not look to the opinion of that court to ascertain its finding of the facts.

5. Same—*considering the evidence—for what purpose.* This court may look into the evidence for the purpose of deciding as to the cor-

rectness and applicability of instructions, or, in a proper case, to determine whether or not there is any evidence tending to support a material element in the cause of action or defense.

6. Instructions— *argumentative*— *reviewing the evidence, etc.* Instructions which are very lengthy, and are in the nature of a resume of the evidence, and are more of an argument than a concise statement of the law, should be refused.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

This is an action on the case, begun in the circuit court of Cook county on the 7th day of October, 1887, by appellees, against appellant. The declaration avers, that on the 13th of June, 1887, plaintiffs were engaged in the business of buying and selling tea and coffee in the city of Chicago, and in the course of their business made purchases and sales of these articles in New York, through their agents, W. H. Crossman & Bro., on orders sent by telegraph by defendant; that on the 16th of said month they delivered to defendant, at Chicago, for transmission to their said agents in New York, the following message:

"*W. H. Crossman & Bro.:*

"Please buy one thousand August.

C. D. Lathrop & Co."

—Meaning thereby, one thousand bags of coffee, deliverable in the month of August, following,—which message was correctly transmitted; that on the same day they delivered to said defendant, at Chicago, for transmission to said agents in New York, another message, as follows:

"*W. H. Crossman & Bro.:*

"Please buy, in addition to thousand August, one thousand cheapest month.

C. D. Lathrop & Co."

—Meaning by the words "one thousand," one thousand bags of coffee; that defendant transmitted said last named mes-

sage so negligently that it was delivered to said agents in New York so as to read:

"*W. H. Crossman & Bro., 77 Broad Street, New York:*

"Please buy, in addition, two thousand August, one thousand cheapest month.                    C. D. LATHROP & Co."

—And that in obedience thereto, said agents did purchase two thousand bags of coffee, deliverable in the month of August, for account of plaintiffs, by means whereof they incurred and paid a large loss,—to-wit, $4000; also, that on the 19th of said month of June, plaintiffs' said agents had purchased, in New York, for their account, five thousand bags of coffee, deliverable in December, following; and on that day plaintiffs delivered to defendant, at Chicago, for transmission to said agents at New York, another message, as follows:

"*W. H. Crossman & Bro.:*

"Put stop order on five thousand December, at seventeen cents.   This order good until countermanded.

                    C. D. LATHROP & Co."

—That said agents were thereby directed to sell said five thousand bags when the price of coffee, deliverable in December, should reach seventeen cents per pound in New York, but defendant so negligently transmitted said message that it was delivered to said agents to read:

"*W. H. Crossman & Bro.:*

"Put stop order on five thousand December, at seventy cents. This order good until countermanded.

                    C. D. LATHROP & Co."

—And that said agents did not sell said five thousand bags when the price reached seventeen cents, but on receipt of said message so incorrectly transmitted, delivered to defendant, for transmission to plaintiffs, in Chicago, the following message:

37.—131 ILL.

"*C. D. Lathrop & Co.:*

"Don't quite understand. Is that order at seventeen or at sixteen seventy? Answer quick.

W. H. Crossman & Bro."

—Which message was received by plaintiffs, at Chicago, on the 18th of said month, and on the same day they delivered to defendant, for transmission to said agents, the following answer:

"*W. H. Crossman & Bro.:*

"Telegram received. Our order reads as follows: Put stop order on five thousand December, at seventeen cents.

C. D. Lathrop & Co."

—Which being duly transmitted and delivered, said agents sold said five thousand bags at the then market price, $16.55 per one hundred pounds, and that by reason of the premises, plaintiffs were damaged in the sum of $4000.

There was a plea of the general issue, and notice of special defenses that the alleged purchases and sales of coffee were not *bona fide* purchases and sales, but in fact gambling contracts, and wholly void. On a trial in the circuit court plaintiffs had judgment for $6698.30 and costs, which, on appeal of the Appellate Court, was affirmed.

Mr. James L. High, for the appellant:

As to the liability of a telegraph company for negligent errors and mistakes in transmitting messages, see *Hadley* v. *Baxendale,* 9 Exch. 341; *Benton* v. *Fay,* 64 Ill. 417; *Sanders* v. *Stuart,* 1 L. R. Com. Pl. Div. 326; *Baldwin* v. *Telegraph Co.* 45 N. Y. 744; *Beaupre* v. *Telegraph Co.* 21 Minn. 155; Gray on Telegraph, 161; *Ellis* v. *Telegraph Co.* 13 Allen, 226; *Telegraph Co.* v. *Guildersleve,* 29 Md. 232; *Mackay* v. *Telegraph Co.* 16 Nev. 222.

The telegraph company is not liable if not apprised by the dispatches, or otherwise, of the nature of the business and of the risk incurred. *Bank* v. *Telegraph Co.* 30 Ohio St. 555;

*Stevenson* v. *Telegraph Co.* 16 U. Can. Q. B. 530; *McColl* v. *Telegraph Co.* 7 Abb. N. C. 151; *Wann* v. *Telegraph Co.* 37 Mo. 472; *Camp* v. *Telegraph Co.* 1 Metc. 164; *Breese* v. *Telegraph Co.* 48 N. Y. 132; *Aiken* v. *Telegraph Co.* 69 Iowa, 31; *Redpath* v. *Telegraph Co.* 112 Mass. 71; *Grinnell* v. *Telegraph Co.* 113 id. 299; *Clement* v. *Telegraph Co.* 137 id. 463; Redfield on Carriers, 552, 557, 561; *Birney* v. *Telegraph Co.* 18 Md. 341.

Messrs. Dexter, Herrick & Allen, for the appellees:

Questions of fact are not reviewable.   *Kreigh* v. *Sherman*, 105 Ill. 49; *Leonard* v. *Patton*, 106 id. 102; *Railroad Co.* v. *Haskins*, 115 id. 309; *Cothran* v. *Ellis*, 125 id. 497.

The opinion of the Appellate Court is not a finding or judgment, and can not be referred to either as a finding of facts or as a part of the judgment, but the only evidence of its findings is the judgment entered by it.   *Coal Co.* v. *Peck*, 98 Ill. 139; *Harzfeld* v. *Converse*, 105 id. 534; *Anderson* v. *Fruitt*, 108 id. 379; *Cummins* v. *Holmes*, 109 id. 19; *Vogle* v. *Brown*, 120 id. 349.

As to the rule of liability for neglect to send message correctly, see *Telegraph Co.* v. *Griswold,* 37 Ohio St. 301; *Marr* v. *Telegraph Co.* 85 Tenn. 530; *Telegraph Co.* v. *Blanchard,* 68 Ga. 299; *Squire* v. *Telegraph Co.* 98 Mass. 232; *True* v. *Telegraph Co.* 60 Me. 8; *Dougherty* v. *Telegraph Co.* 75 Ala. 168.

Mr. Justice Wilkin delivered the opinion of the Court:

It seems to be thought by counsel for appellant, that notwithstanding the judgment of affirmance in the Appellate Court, controverted questions of fact may still be reviewed in this court, because, as is said, the Appellate Court has not expressly found, in terms, against appellant on these questions, and because portions of its opinion are inconsistent with and negative the presumption of such a finding.   This

position is untenable.    Sections 87 and 89 of our Practice act
(chap. 116,) prohibit this court from re-examining contro-
verted questions of fact in all cases of this kind.    We may
look into the evidence for the purpose of deciding as to the
correctness of instructions, or, in a proper case, to determine
whether or not there is any evidence tending to support a ma-
terial element in the cause of action or defense.    In such cases
it becomes necessary to examine the evidence in order to settle
questions of law, but we have uniformly held that we can not
examine evidence to determine whether the Appellate Court
found correctly as to the facts in issue.    See *Montgomery et al.*
v. *Black et al.* 124 Ill. 62, and cases cited; *Commercial Na-
tional Bank* v. *Proctor et al.* 98 id. 561; *Darlington et al.* v.
*Chamberlin,* 120 id. 585; *Sangamon Coal Mining Co.* v. *Wig-
gerhaus,* 122 id. 281; *Hayes et al.* v. *Massachusetts Mutual Life
Ins. Co.* 125 id. 631.    We also said in *Coalfield Coal Co.* v.
*Peck,* 98 Ill. 145, that we could not look to the opinion of the
Appellate Court to ascertain what that court found the facts
to be.

The controlling question in the case, so far as we are at
liberty to pass upon it, arises on the refusal of the trial court
to give the third instruction asked by appellant, as follows:

"The jury are instructed that the defendant is only liable for
such damages, if any, as were actually contemplated, or which
might reasonably be supposed to have been contemplated, by
the parties in the delivery and receipt of the messages in the
transmission of which the alleged errors occurred.    And if the
jury believe, from the evidence, that such messages were not
sufficiently clear or precise to inform the agents of the de-
fendant receiving them, of their meaning, and of the possible
risk and damage which might result from mistakes in their
transmission, and that such facts were not disclosed by the
plaintiffs to the defendant or its agent, then the defendant can
not be charged with having contemplated the special damages
claimed by the plaintiffs in this action, and plaintiffs are only

entitled to recover the amount actually paid by them for the sending of such messages, with interest at six per cent from the date of payment to the date of your verdict."

It is earnestly contended by counsel for appellant, that the messages,—"Please buy, in addition to thousand August, one thousand cheapest month," and "Put stop order on five thousand December, at seventeen cents,"—were, unexplained, meaningless and unintelligible to the operator of appellant who transmitted them, and therefore, as in case of cipher dispatches, no special or consequential damages could have been reasonably contemplated by the parties when they were sent, and hence none can be recovered in this suit.    This position is based on the rule of damages announced in *Hadley* v. *Baxendale,* 9 Exch. 341, and followed generally in this country, as well as England.    In any view of that rule, as applied to this case, the instruction is too narrow.    The evidence shows that at the time of sending these dispatches, appellees were, and had for some time prior thereto, been engaged in the business of jobbers in coffee, tea and sugar in the city of Chicago ; that Crossman & Bro. were commission merchants in New York, buying and selling coffee, rubber and hides, on commission ; that appellant had a branch office near the place of business of appellees, from which the messages in question were sent, and had frequently sent others pertaining to their business. It also tends to show, that from business transactions in New York between appellant and the firm of Crossman & Bro., appellant knew the business in which the latter firm was engaged.    It is in proof, that during the month of June, 1887, and prior to the first mistake complained of, a number of dispatches were sent by appellees to Crossman & Bro. from appellant's Chicago office.    One on the 13th read :    "Please wire us to-day whether you do or do not execute our order for five thousand *bags*, as we must place it elsewhere if you decline." Another of the same date refers to "five thousand *bags*."    It must at least be conceded that there is evidence tending to

show, that from their previous dealings appellant knew, or might by reasonable diligence have understood, the purport of these messages. Therefore, in determining whether or not the messages were sufficient to inform the operator of their meaning, and of the possible risk of loss to appellees by a mistake in transmitting them, the jury should have been left free to consider all the facts and circumstances proved in the case, bearing on that question, whereas the instruction limits the inquiry to that which appears in the dispatches themselves, and to such facts as may have been disclosed by the plaintiffs to the defendant or its agent at the time they were sent. See 2 Thompson on Negligence, p. 857.

On the question as to how far mere indefiniteness in the language of a message will defeat a recovery for consequential damages against a telegraph company, the decisions can not be said to be harmonious. Counsel for appellant contends that the better line of authorities sustains the rule announced in this instruction, viz., that the operator who transmits a message must be able to understand its meaning as to quantity, quality, price, etc., as the sender and party to whom it is sent themselves understood it, otherwise it is said he can not reasonably be supposed to have contemplated damages as the probable consequence of a failure to correctly transmit it. While some of the cases cited go to that extent, especially where the message is in cipher, another line of decisions, and, we think, founded on the better reasons, hold that where enough appears in the message to show that it relates to a commercial business transaction between the correspondents, it is sufficient to charge the company with damages resulting from its negligent transmission.

In *United States Telegraph Co.* v. *Wenger*, 55 Pa. St. 262, a message read, "Buy fifty (50) Northwestern, fifty (50) Prairie du Chien, limit forty-five (45)." There was a delay by the telegraph company in its delivery, resulting in a loss to the sender on account of the advance in price of Chicago and

Northwestern Railway Company stock, and the Milwaukee and Prairie du Chien Railway Company stock, which the message was intended to order purchased. The Supreme Court of Pennsylvania sustained a recovery, saying: "The dispatch was such as to disclose the nature of the business to which it related, and that loss might be very likely to occur if there was a want of promptitude in transmitting it, containing the order."

In *Tyler* v. *Western Union Telegraph Co.* 60 Ill. 421, the message was, "Sell one hundred (100) Western Union; answer price." The message as delivered read, "Sell one thousand (1000)," instead of "one hundred (100)." The message was intended as an order to sell one hundred shares of stock in Western Union Telegraph Company. The agent, obeying the order as delivered, sold one thousand shares of said stock, and to fill the order was compelled to buy nine hundred (900) shares. We held that the plaintiff was entitled to recover the difference between the price for which the shares of stock were sold and that which he was compelled to pay for those purchased. On the question as to the sufficiency of the dispatch to inform the agent of the transaction to which it referred, so as to charge the telegraph company with resulting damages, the rule announced in *United States Telegraph Co.* v. *Wenger*, *supra*, was approved, and it was held that the dispatch disclosed the nature of the business as fully as the case demanded. On a second appeal,—74 Ill. 168,—by general language the decision is re-affirmed.

In *Telegraph Co.* v. *Griswold*, 37 Ohio St. 302, a dispatch read, "Will you give one fifty for twenty-five hundred at London; answer at once, as I have only till to-night." As delivered, it read "one five," instead of "one fifty." As written, it was an inquiry whether the sendee would pay $1.50 in gold for 2500 bushels of flax seed at London, Ontario, the parties having previously corresponded on the subject. The sendee replied to the dispatch as received, ordering the purchase, and he recovered from the telegraph company the difference in

price. On appeal to the Supreme Court, it was contended, as it is here, that the message was indefinite, and therefore the recovery below unauthorized. But the court said: "It appeared upon its face that it related to a business transaction, —a transaction involving the purchase and sale of property. The company was therefore apprised of the fact that a pecuniary loss might result from an incorrect transmission of the message. Where this appears, there is no such obscurity as relieves the company from liability for negligently failing to transmit and deliver a message in the language in which it was received."

In *Marr* v. *Western Union Telegraph Co.* 85 Tenn. 530, a message was delivered to the company reading, "Buy one hundred shares Memphis and Charlestown." As delivered, it read, "Buy one thousand shares Memphis and Charlestown." The recovery for consequential damages was sustained, the Supreme Court of that State saying: "This message was so written that the slightest reflection would enable the operator who undertook its transmission, to see its commercial importance, and put him on his guard against error."

In *Western Union Telegraph Co.* v. *Blanchard,* 68 Ga. 299, the message sent read, "Cover two hundred September, one hundred August." By an error in its transmission, as received it read "two hundred August," instead of "one hundred." As sent, it was an order to sell one hundred bales of cotton for August delivery, and two hundred for September delivery. The agent sold two hundred bales for August, and plaintiff was compelled to buy one hundred at a loss in order to meet the sale. A recovery for this loss was sustained by the Supreme Court of that State in the following language: "As to the fifth ground in the request to charge, we do not see but what the message sought to be transmitted was, according to the proof, an ordinary commercial message, intelligible to those engaged in cotton dealing, and we can see no special purpose intended by the sender which was unknown to the company,

so as to vary the rule of liability.  There was at least enough known to show it was a commercial message of value, and that is sufficient." See, also, *Squire* v. *Union Telegraph Co.* 98 Mass. 232; *Pepper* v. *Western Union Telegraph Co.* 4 Tenn. 660; Sutherland on Damages.

All the cases which hold that a telegraph company is not liable for consequential damages for a failure to transmit a dispatch as received, on the ground of indefiniteness or obscurity in the language of the message, do so upon the ground that unless the agent of the company may reasonably know from the message itself, or is informed by other means, that it relates to a matter of business importance, he can not be supposed to have contemplated damages as a result from his failure to send it as written, as in the case of cipher dispatches.     The Supreme Court of Wisconsin, in *Condee* v. *Western Union Telegraph Co.* 34 Wis. 472, say: "The operator, who represents the company, and may for this purpose be said to be the other party to the contract, can not be supposed to look upon such a message as one pertaining to transactions of pecuniary value and importance, and in respect to which pecuniary loss or damage will naturally arise in case of his failure or omission to send it. It may be a mere item of news, or some other communication of a trifling and unimportant character."

It is clear enough, that, applying the rule in *Hadley* v. *Baxendale, supra,* a recovery can not be had for a failure to correctly transmit a mere cipher dispatch, unexplained, for the reason that to one unacquainted with the meaning of the ciphers it is wholly unintelligible and nonsensical. An operator would, therefore, be justifiable in saying it can contain no information of value as pertaining to a business transaction, and a failure to send it, or a mistake in its transmission, can reasonably result in no pecuniary loss.     The messages in this case, however, are not cipher dispatches. Their language is plain and intelligible to every one who can read, so far as they purport

to disclose the business to which they relate. They are abbreviations, and clearly indicate that they relate to business transactions between the sender and sendee. The first message, "Please buy, in addition to thousand August, one thousand cheapest month," was notice to the agent at Chicago that appellees were ordering their agents in New York to purchase merchandise for them. We do not agree with counsel in saying that it might as well be construed to be an order "for a thousand toothpicks or a thousand papers of pins, as anything else." Every one of intelligence knows that such articles are not purchased in that way. Suppose, however, that the agent was not informed as to the quantity, quality and value of the merchandise to be purchased, by the message; would that justify him in contemplating, within the rule in the *Hadley case, supra,* no damages as a result of his negligence or omission of duty in promptly and correctly sending it forward? It certainly can not be contended that the agent must be informed of all the facts and circumstances pertaining to a transaction referred to in a telegram, which are known by the parties themselves, to make his company liable for more than nominal damages. If it should be so held, the telegraph would cease to be of practical utility in the commercial world.

It is not easy to state a case in which it can be said the parties contemplated, at the time of contracting, all the damages which would probably result from a failure to perform the contract. We think the reasonable rule, and one well sustained by authority, is, that where a message, as written, read in the light of well known usage in commercial correspondence, reasonably informs the operator that the message is one of business importance, and discloses the transaction so far as is necessary to accomplish the purpose for which it is sent, the company should be held liable for all the direct damages resulting from a negligent failure to transmit it as written, within a reasonable time, unless such negligence is in some way excused. Under this rule, both dispatches, as presented to

appellant's operator, were sufficiently explicit to charge it with the loss sustained by appellees, resulting from what has been found by the jury inexcusable mistakes.

Objection is also urged to the ruling of the circuit court in giving, modifying and refusing other instructions; also, in excluding certain evidence offered on behalf of the defendant below. We have examined these several points of objection, and think they are without substantial merit, unless it be as to the giving of the fourth and fifth instructions on behalf of plaintiffs. They are subject to just criticism. They violate a wholesome rule of practice announced in *Merritt* v. *Merritt*, 20 Ill. 80. They are very lengthy, are rather in the nature of a resume of the evidence and an argument, than concise statements of the law, and for that reason should have been refused. But after having carefully compared them with the evidence, we can not say that they are so unfair to appellant as to have misled the jury to its prejudice.

Finding no reversible error in the record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*