### LAFAYETTE S. SULLIVAN ET AL. v. WESTERN UNION TELEGRAPH CO.

1. NONDELIVERY OF TELEGRAM—BURDEN ON TELEGRAPH COMPANY TO REBUT PRE-SUMPTION OF NEGLIGENCE.

Where, in an action against a telegraph company for the nondelivery of a telegram entrusted to it for transmission and delivery, such nondelivery is shown, the burden is on the company to remove the presumption of negligence thereby raised. *Western Union Tel. Co.* v. *Griswold*, 37 Ohio St. 301 [41 Am. Rep. 500], followed.

2. NOMINAL DAMAGES FOR NEGLIGENCE OF TELEGRAPH COMPANY IN FAILING TO DELIVER TELEGRAM.

A telegraph company negligently failing to deliver a telegram entrusted to it for transmission and delivery, is liable for nominal damages. In a case where such failure is shown, it is error to arrest the case from the jury and direct a verdict for the defendant company. *First Nat. Bank* v. *Telegraph Co.* 30 Ohio St. 555, 568 [27 Am. Rep. 485], followed.

3. PROOF TO WARRANT COMPENSATORY DAMAGES FOR FAILURE TO DELIVER TELEGRAM.

A telegraph company receiving a telegram for transmission and delivery is bound to take notice of such facts as are brought to its attention by the telegram in connection with all known circumstances. For unexcused failure to deliver such telegram, the company is liable for such damages "as naturally flow from a breach of contract, or such as may fairly be supposed to have been within the contemplation of the parties at the time the contract was made."

[Syllabus by the court.]

ERROR to Lucas common pleas court.

**Seney & Thurstin,** for plaintiffs in error.
**Smith & Beckwith,** for defendant in error.

### WILDMAN, J.

The plaintiffs in error here brought suit in the court of common pleas against the Western Union Telegraph Company, for damages to the amount of $600, claimed to have been sustained by them in consequence of the nondelivery of a telegram. The facts disclosed by the pleadings and evidence, so far as a statement is essential to an understanding of our views, are as follows: Lafayette Sullivan and his co-complainants, on December 2, 1905, were the owners of a steamer called the David W. Rust, then lying, unloaded, in the port of Buffalo in the state of New York. Sullivan was the managing owner of said vessel, and, on the day named, at 9:45 P. M., gave to the defendant, at its Toledo office, the following message, to be by it delivered to the addressee:

"To Capt. Wm. J. Leaver, Stmr. D. W. Rust. Com. Minnesota

Lucas County.

Dock, Buffalo, N. York. Will wire you in the morning about coal. Collect. L. S. Sullivan.''

This message was received at the defendant's Buffalo office at 11:10 P. M., Buffalo time, which was equivalent to 10:10 P. M. Toledo time, the time changing at Buffalo from central to eastern standard time. The message was never delivered. It is alleged in the petition, and although denied in the answer, the averment is supported by evidence, that at the time of sending this message, negotiations were in progress, between Sullivan and Mr. S. C. Schenck, of Toledo, for the charter of the boat to carry a load of coal from Buffalo to Toledo to be delivered at one of the docks in the city of Toledo. Mr. Sullivan testified, as disclosed by the bill of exceptions, that at the time this telegram was sent to Captain Leaver an arrangement for the transfer of a cargo of coal had been completed except as to the insurance of the cargo, by him—Sullivan. It is claimed by the plaintiffs that the purpose of sending this message to Captain Leaver was to detain the boat at the Minnesota dock in Buffalo until further directions could be given in the morning concerning said cargo. On Sunday morning, December 3, Sullivan wired the captain as follows:

"To Capt. Wm. J. Leaver, Stmr. David W. Rust, Buffalo, N. York. Schenck has wired Russell 'Load Rust for Toledo.' Have arranged with Schenck about insurance. Be careful coming up. I insure cargo. Have key your room. Wire when leave. Collect. L. S. Sullivan.''

Schenck was agent of the coal company in Toledo and Russell was the agent of the same company in Buffalo. Schenck did wire Russell, on the same day, the 3rd:

"To D. E. Russell, Buffalo, N. Y. Sullivan agrees to carry insurance on cargo Steamer Rust; confirming same in writing to-day. Can you load her nut or egg for Wabash dock? S. C. Schenck.''

The second telegram from Sullivan to Captain Leaver and the telegram from Schenck to Russell were sent in ignorance of the fact, which then existed, that the boat had left the city of Buffalo at 3:15 o'clock on the morning of December 3, the captain of the boat, as I have already stated, not having received the first telegram attempting to inform him that he would be wired in the morning about coal.

At the close of the plaintiff's case, upon motion of the defendant, the trial judge arrested the case from the jury and directed a verdict in favor of the defendant.

We have discovered no substantial errors in the admission or rejection of evidence to the prejudice of the plaintiffs, and our attention has been directed to the vital claim of error arising upon the action of

the court in arresting the case from the jury and directing a verdict. It is said to us in argument, and it sufficiently appears, that the court based its action upon substantially two grounds: First, the failure of the plaintiff to establish the alleged negligence of the defendant; and, second, that the damages claimed were not such as could be recovered upon any basis of the circumstances alleged and proven.

As to the first of these claims, we think the court was very clearly in error. Whether or not the evidence sufficiently disclosed negligence in the defendant company to warrant a verdict, we are not called upon to decide. There was, clearly, evidence tending to show negligence, and our Supreme Court has established a rule that even in the absence of all evidence upon the subject, the defendant, so far as this question is concerned, must fail. In the case of *Western Union Tel. Co.* v. *Griswold,* 37 Ohio St. 301 [41 Am. Rep. 500], it is held:

"Where, in an action against the company for damages resulting from an inaccurate transmission of a message, such inaccuracy is made to appear, the burden of proof is on the company to show that the mistake was not attributable to its fault or negligence."

Counsel for defendant in error seek to draw a distinction between the facts in the case cited and those in the case at bar. In that case the alleged negligence was in the failure to transmit the message accurately. In the present case the facts disclose that the message was not transmitted to the person to whom it was addressed at all, and it seems to us that if the principle decided in *Western Union Tel. Co.* v. *Griswold,* is correct, *a fortiori* the burden must rest upon the defendant company to explain the total nondelivery of the dispatch entrusted to it.

In 2 Thompson, Negligence (1880 ed.) page 843, I find this language:

"In the leading case in Iowa, in which the rule is laid down, it was held that it operated to cast upon the sender of the message the burden of proving negligence or other fault in the company. It was there held that the mere proof of a mistake in an unrepeated message, without other evidence that the company has been guilty of negligence, will not render it liable. But this conclusion by no means follows from the rule. It is contrary to the weight of authority, and destitute of support in legal analogy. If A, for a consideration, undertakes to do a certain thing for B, and fails to do it, B's case is ordinarily made out by showing the undertaking, the consideration, and the failure. It is a case for the application of the rule, *res ipsa loquitur.* The failure of A to fulfill his contract speaks for itself, and makes out a *prima facie* case for B, and the burden is upon A to show a legal excuse for his

Lucas County.

failure, if he can. Moreover, this rule is one of necessity; for it is seldom or never possible for the sender of a dispatch to show negligence in the company beyond the mere fact that it failed to deliver the message as written. If its failure was not due to negligence, the means of showing that fact is exclusively within its own possession, and, from the nature of the case, the plaintiff will seldom be able to produce evidence in rebuttal.''

This reasoning is just as applicable to the case of nondelivery of a message as to the inaccurate transmission of one.

Referring again to *Western Union Tel. Co.* v. *Griswold, supra,* page 313, we find this language:

''We are also of the opinion that the failure to transmit and deliver the message in the form or language in which it was received, is *prima facie* negligence, for which the company is liable; and that to exonerate itself from the liability thus presumptively arising, it must show' that the mistake was not attributable to its fault or negligence. This rule not only rests upon sound reason but is well sustained by well-considered cases.''

And this statement is followed by the citation of numerous cases. We are, then, satisfied that the court erred in this regard, and the question as to whether or not the defendant company committed negligence, is, for the purposes of our present inquiry, disposed of.

Was the court correct in its other view upon which it sustained the motion? Are the damages claimed here remote or of such character that the plaintiff is not entitled to recover, although they were caused by the defendant's negligence? We have found much confusion and conflict in the adjudications of the different states upon the question of the extent to which a telegraph company is required to be enlightened by the wording of a telegram, or other circumstances, as to the character of the business involved. The current of authority seems to hold that a company is not liable for the nondelivery or incorrect transmission of a cipher message which is unintelligible to it. It has been held by the courts that, with regard to messages involving no pecuniary business, as, for instance, messages informing one of the approaching death of a near relative, or some matter of such concern, where its nonreceipt might be attended with great mental pain merely, no recovery can be had for damages. Our own Supreme Court has so held, but with regard to telegrams based upon business involving moneyed interests, the authorities are by no means uniform—as I have said, they are confusing and in conflict. We have had no decisive adjudication in this state disposing of the controversy in this respect.

In the case of *First Nat. Bank* v. *Telegraph Co.* 30 Ohio St. 555 [27 Am. Rep. 485], our Supreme Court held, however:

"In case of a breach of contract, actual damages not being proved, nominal damages may be recovered."

And that conclusion of the court, as expressed in the syllabus, was made the ground of reversal of the judgment of the lower court which had not awarded such nominal damages. I read from page 568:

"The plaintiff asked the court to charge that, if the nondelivery of the message was by reason of defendant's negligence, plaintiff was entitled to nominal damages, if there were no actual damage. This was refused, and the court did charge that there was no right of action, unless injury was shown. This was error, for which the judgment must be reversed."

Probably the Supreme Court deemed the matter of sufficient importance to justify a reversal in view of the fact that it might affect the question of costs, or, possibly for some other reason, as establishing the legal rights of the parties and as affecting their future conduct in other cases. Had the view entertained by the trial judge in the present case been correct—that the plaintiff's case must fail because no negligence was shown—the court would have been justified in directing a verdict for the defendant. It is only where negligence appears or is presumed that even nominal damages are recoverable. But we have already indicated that the judge was in error upon this first proposition, and it necessarily follows that he was likewise in error in directing a verdict for the defendant. Under this decision of the Supreme Court, if there was unrebutted evidence tending to show or raising a presumption of negligence, the case should have been submitted to the jury with an instruction that if no actual damage resulted, the jury should award a verdict for nominal damages. For this reason, then, the judgment must be reversed; and as a new trial will be necessary in the court below, it is proper that we should advise the court of our views as to the more important question bearing upon the right of the plaintiff to compensatory damages under the circumstances disclosed.

The adjudications in the different states and in England nearly all seem to lead back to the case of *Hadley* v. *Baxendale*, 9 Exch. 341 [26 Eng. L. & Eq. 398]. Our own Supreme Court, in line with the numerous other courts of the country, sought to derive instruction from this leading case, and in *First Nat. Bank* v. *Telegraph Co. supra,* substantially adopted the rule enunciated in the English case referred to. In the syllabus, our Supreme Court say:

"In case of failure to deliver a telegraphic message, the company is

Lucas County.

only liable for such damages as naturally flow from the breach of contract, or such as may fairly be supposed to have been within the contemplation of the parties, at the time the contract was made.''

In one of the reports which we have examined, the court of another state has changed this conjunction ''or'' to the conjunction ''and.'' But we have in Ohio the adoption of an alternative rule, and if the damages claimed can fairly be brought within either of these two classes: such as naturally flow from a breach of contract, or such as may fairly be supposed to have been within the contemplation of the parties at the time the contract was made, then such damages are recoverable. On page 565 of *First Nat. Bank* v. *Telegraph Co. supra,* Judge Wright, who announces the opinion, after quoting a statement of the rule made by Judge Earl, in *Leonard* v. *Telegraph Co.* 41 N. Y. 544 [1 Am. Rep. 446], offers a more precise statement of his own views, in the following language:

''A more precise statement of the rule is, that a party is liable for all the direct damages which both parties would have contemplated as flowing from its breach, if, at the time they entered into it, they had bestowed proper attention upon the subject, and had been fully informed of the facts.''

This may or may not be the principle which was favored by the entire court, but it is at least safe for us to rely upon the language embodied in the syllabus. We have arrived at the conclusion, from an examination of the authorities, and without much effort to reconcile them—because it is impossible to do that—looking at what seemed to us the just principles that should govern cases of this character, that the defendant company is bound to take notice of such facts as are brought to its attention by the telegram or other circumstances within its knowledge.

In 2 Thompson, Negligence (1880 ed.) page 828, is an extended and instructive chapter on the liability of telegraph companies for negligence, in which he collates numerous authorities and offers his own judgment as to what should be the correct rule. On page 849, after referring to the leading case of *Hadley* v. *Baxendale, supra,* and some other authorities, which were manifestly examined by our Supreme Court in *First Nat. Bank* v. *Telegraph Co. supra,* he uses this language, quoting Chief Justice Earl in *Leonard* v. *Telegraph Co. supra,* to which our own Supreme Court refer:

''It is not required that the parties must have contemplated the actual damages which are to be allowed; but the damages must be such as the parties may fairly be supposed to have contemplated when they

made the contract. Parties entering into contracts usually contemplate that they will be performed, and not that they will be violated. They very rarely actually contemplate any damages which would flow from any breach, and very frequently have not sufficient information to know what such damages would be. As both parties are usually equally bound to know and be informed of the facts pertaining to the execution or breach of a contract which they have entered into, I think a more precise statement of this rule is, that a party is liable for all the direct damages which both parties to the contract would have contemplated as flowing from its breach, if, at the time they entered into it, they had bestowed proper attention upon the subject, and had been fully informed of the facts."

It will be noticed that this is the same phraseology used by Judge Wright in *First Nat. Bank* v. *Telegraph Co. supra*, and which he undoubtedly borrowed from Judge Earl in *Leonard* v. *Telegraph Co.* Mr. Thompson continues:

"In actions *ex delicto*, the damages to be recovered must be the natural and proximate consequences of the act complained of, unless there be circumstances of aggravation, when exemplary damages will be awarded. By these rules, then, the liability of the owners of telegraphs, in actions against them, must be measured. The statement of the adjudicated cases will indicate the manner in which the courts have applied them."

It is hard to derive from the wording of the dispatch in the case at bar much information beyond the facts that the person to whom it was sent was the captain apparently in charge of the steamer named "The Rust;" that it was at the time supposed to be at the Minnesota dock, in the city of Buffalo and that this dispatch would be followed by another in the morning, and that both had some relation to coal. We are of the opinion, however, that the telegraph company could not blind its eyes to such other circumstances as may be assumed to have been within its knowledge concerning the character of the port; concerning the ordinary work of a steamer at that port and the course of traffic and such other circumstances as might naturally lie within the purview of a telegraph company like the Western Union, engaged in the transaction of business which would naturally attract its attention to such matters as these.

It is claimed by counsel for defendant in error that the principle of *First Nat. Bank* v. *Telegraph Co. supra*, should apply in another respect to the case at bar and prevent the plaintiff's recovery, to wit, that this plaintiff will not be permitted to recover for the negligence

of another where that negligence would not have caused the damage except for the intervention of some independent cause. We think, however, that the case at bar is to be distinguished from the one cited, and that in the conditions before us the evidence tends to disclose that the plaintiff did directly sustain the damage asserted, whereas in the case cited, it does not appear that any damage was so sustained. The matter is one for a jury, guided by proper instructions from the court; and both in this connection and in support of our view as to knowledge of the defendant of the business character of the telegram, I wish to quote some language from a case decided by the Illinois supreme court. *Postal Telegraph Cable Co.* v. *Lathrop,* 7 L. R. A. 474 [131 Ill. 575; 23 N. E. Rep. 583; 19 Am. St. Rep. 55], I read the second and third paragraphs of the syllabus:

"The question whether or not telegraph dispatches are sufficient to inform the operator of their meaning, and of the possible risk of loss by mistake, is not to be determined solely by the dispatches themselves, but all the facts and circumstances, including previous messages sent by the operator for the same parties, may be considered.

"Where enough appears in a telegraph message to show that it relates to a commercial business transaction, it is sufficient to charge the company with damages resulting from its negligent transmission, although the operator may not be able to understand its meaning as to quantity, quality, price, etc., as the sender and the party to whom it is sent understand it."

On page 476, in the opinion of the judge, I find this language:

"Therefore, in determining whether or not the messages were sufficient to inform the operator of their meaning, and of the possible risk of loss to appellees by a mistake in transmitting them, the jury should have been left free to consider all the facts and circumstances proved in the case bearing on that question, whereas the instruction limits the inquiry to that which appears in the dispatches themselves, and to such facts as may have been disclosed by the plaintiff to the defendant or its agent at the time they were sent.  *  *  *

"On the question as to how far mere indefiniteness in the language of a message will defeat a recovery for consequential damages against a telegraph company, the decisions cannot be said to be harmonious. Counsel for appellant contends that the better line of authorities sustains the rule announced in this instruction, viz., that the operator who transmits a message must be able to understand its meaning as to quantity, quality, price, etc., as the sender and the party to whom it is sent themselves understood it; otherwise it is said he cannot reasonably be

Sullivan v. Telegraph Co.

supposed to have contemplated damages as the probable consequence of a failure to correctly transmit it. While some of the cases cited go to that extent, especially where the message is in cipher, another line of decisions, and we think founded on the better reasons, hold that where enough appears in the message to show that it relates to a commercial business transaction between the correspondents it is sufficient to charge the company with damages resulting from its negli-. gent transmission.''

And on page 477:

''It certainly cannot be contended that the agent must be informed of all the facts and circumstances pertaining to a transaction referred to in a telegram, which are known by the parties themselves, to make his company liable for more than nominal damages. If it should be so held, the telegraph would cease to be of practical utility to the commercial world.

''It is not easy to state a case in which it can be said the parties contemplated, at the time of contracting, all the damages which will probably result from a failure to perform the contract. We think the reasonable rule, and one well sustained by authority, is that where a message as written, read in the light of well known usage in commercial correspondence, reasonably informs the operator that the message is one of business importance, and discloses the transaction so far as is necessary to accomplish the purpose for which it is sent, the company should be held liable for all the direct damages resulting from a negligent failure to transmit it as written, within a reasonable time, unless such negligence is in some way excused.''

Our adjudications in Ohio are so meagre upon these precise points, that it is interesting to examine as one of the pioneer cases a case tried before Judge Starkweather in the court of common pleas in 1853, *Bowen* v. *Telegraph Co.* 1 Dec. Re. 574 (10 W. L. J. 415; 1 Am. Law Reg. 685), in which he enunciates as follows substantially the doctrine which I have just quoted

''But if it (the telegram) was sufficiently plain to be understood by Bowen & McNamee, the plaintiffs in this case, the merchants to whom it was addressed, though not intelligible to others, that it was appreciable, and if changed to the injury of the plaintiffs, such a change was a proper subject of damages.''

We are not quite disposed to say that it was the duty of the court below to find as a matter of law that this telegram sufficiently apprised the company of its own importance and the danger of financial loss which might arise from nondelivery, but we are of the view that

Lucas County.

the case should fall within the general class of those which involve mixed questions of law and fact, and that it was one to be submitted to a jury for its consideration under proper instructions from the court. We do not desire to go further than this at present, and for the purpose of this inquiry it is enough to say that we have concluded that the judgment should be reversed and the cause remanded for another trial. Such will be the judgment.

**Haynes** and **Parker, JJ.,** concur.