# CASES

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEAR 1909.

---

Illinois Smelting & Refining Company, Appellee, v. Western Union Telegraph Company, Appellant.

## Gen. No. 14,164.

DAMAGES—*what may not be recovered, in an action for failure promptly to transmit telegraphic message.* If the telegram not promptly delivered does not show upon its face that it related to a commercial transaction, damages suffered in connection with such a transaction as a result of the non-delivery of such telegram cannot be recovered.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Reversed and judgment here. Opinion filed January 8, 1909.

WEST, ECKHART & TAYLOR, for appellant.

DANIEL M. ROTHSCHILD, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Appellee, Illinois Smelting & Refining Company, brought this action against appellant, Western Union Telegraph Company, to recover damages claimed to have been sustained by appellee as a result of delay in transmitting and delivering a telegram sent from

(163)

Chicago by Weill, its president, to J. A. Morgan, appellee's foreman, at Sandoval, Illinois.

The record shows that on September 10, 1901, appellee delivered the following message to appellant for transmission to J. A. Morgan, Sandoval, Illinois:

"SEPT. 10, 1901.

J. A. MORGAN,
        Sandoval, Ills.

Take five o'clock train to-morrow morning.  Meet me at East St. Louis relay depot.

M. WEILL."

Appellant received the message for transmission at 6:49 o'clock P. M. on that date.  The message was not delivered to Morgan until September 11, 1901, at 9:30 o'clock A. M.  The usual time for transmission of a telegraphic message from Chicago, Illinois, to Sandoval, Illinois, is about two hours.

A short time after sending this message Mr. Weill took a train and arrived in East St. Louis on the morning of September 11, 1901.  As there were but two trains from Sandoval to East St. Louis daily— one leaving Sandoval at five o'clock in the morning and the other at the same hour in the afternoon— Mr. Morgan did not go to East St. Louis on the morning of September 11, 1901.  When Mr. Morgan did not appear at the East St. Louis relay depot Mr. Weill, thinking that he might be at Collinsville, Illinois (a town about ten miles from East St. Louis), where his family resided, went to Collinsville, where he learned that Morgan was in Sandoval.  Weill tried to talk to Morgan over the long distance telephone from Collinsville, but the telephone lines were not in order and he could not make himself understood.  He then went back to East St. Louis and from there to St. Louis, where he inspected fire brick and talked with Evans & Howard, brick makers, and other manufacturers.  He did not purchase any brick, however, because he did not know the size or quantity required.

He then took the afternoon train from East St. Louis to Sandoval, where he saw Morgan and learned from him the size and quantity of brick desired. He thereupon took the night train for Chicago, where he arrived the next morning.

Appellee shortly thereafter purchased 25,000 brick from Evans & Howard for appellee's Sandoval works by correspondence, but, as the price of brick had advanced since September 11, 1901, it was forced to pay one dollar per thousand more for the brick than the price at which brick could have been purchased on September 11, 1901.

It appears that the purpose of Weill's journey was to purchase fire brick for appellee's plant at Sandoval, and that Mr. Morgan was in charge of the plant and knew the kind, quality and quantity of brick required.

It was stipulated on the trial before the court, without a jury, that Weill's expenses on the trip to St. Louis and return, including car fare to Collinsville and telephone charges to Sandoval, were $23.40. The evidence further showed that Weill's time spent in going to St. Louis and back was worth to appellee fifty dollars per day, and some of the testimony was that it was worth $200 per day.

On this testimony the trial court allowed appellee's claim for the amount of $75, which included the loss of time and the expenses of the trip. The court disallowed the claim for damages for the advance in price which appellee was compelled to pay for the brick it purchased.

It was also stipulated that appellee owed appellant $100 for telegraphing done by appellant for appellee in the months of November and December, 1901, and January, 1902. The court allowed this set-off, which left a balance in favor of appellant of $25 on which the court allowed interest amounting to six dollars, and rendered judgment in favor of appellant for thirty-one dollars.

It is conceded in argument on behalf of appellant

·166    APPELLATE COURTS OF ILLINOIS.

Illinois Smelting & Refining Co. v. Western Union Co., 146 App. 163.

that it did not use reasonable diligence in the delivery of the telegram in question to Mr. Morgan, and that it conceded on the trial that the items of damages of $3.15 excess railroad fare spent by Weill in trying to locate and in locating Morgan, and the item of seventy-five cents spent by Weill in trying to communicate with Morgan by telephone, were proper items of damages, with respect to which appellee's position was changed by the delay in delivering the telegram.

Appellant contends that the trial court properly disallowed appellee's claim of $25 for damages for the advanced cost of the brick purchased by it, on the ground that the telegram of September 10, 1901, upon which the suit is based, did not show on its face that it was a message relating to a commercial business transaction; and there is no evidence in the record that at the time the contract of transmission was made appellant's agent to whom Weill delivered the message for transmission knew, or should have known, that the message related to a commercial business transaction, under the rule laid down in Postal Telegraph-Cable Co. v. Lathrop, 131 Ill. 575.

In our opinion this contention of appellant is well founded.  In the case cited the Supreme Court at page 586 of the opinion say:  ''We think the reasonable rule, and one well sustained by authority, is that where a message as written, read in the light of well known usage in commercial correspondence, reasonably informs the operator that the message is one of business importance, and discloses the transaction so far as it is necessary to accomplish the purpose for which it is sent, the company should be held liable for all the direct damages resulting from a negligent failure to transmit it as written, within a reasonable time, unless such negligence is in some way excused.''

Williams v. Telegraph Co., 136 N. C. 82, was an action to recover damages for failing to correctly transmit the following telegram:

''Have Dr. Register meet me at Weldon Friday.''

In passing upon the question of liability the court said: "The principle uniformly sustained by the cases upon the subject, some of which we have cited, is that unless the meaning or import of a message is either shown by its own terms or is made known by information given to the agent receiving it in behalf of the company for transmission, no damages can be recovered for failure to correctly transmit and deliver it beyond the price paid for the service." To the same effect are Kirby v. W. U. T. Co., 77 S. C. 404; W. U. T. Co. v. Bryant, 17 Ind. App. 70.

The application of the principle held in these cases to the facts of this case is necessarily fatal to the right of plaintiff to recover. The telegram before us does not show that a purchase or sale of property was contemplated or involved. There is nothing in the message when read in the light of well-known usage in commercial correspondence which reasonably informs the operator that the message is one of business importance. The liability of every person or corporation for failure to fulfill a contract is measured by the well-known rule of Hadley v. Baxendale, 9 Exch. 341, followed generally in this country, as well as in England. By this rule the damages which may be recovered in an action for breach of contract are limited to such as may reasonably be supposed to have been in the contemplation of both parties at the time the contract was made, as a probable result of the breach of it. This message did not advise appellant that a failure to deliver it within a reasonable time would be likely to cause a financial loss to appellee, or to Weill, who sent it. Hence, such loss or damages could not have been in the contemplation of appellant when the contract was made.

In our opinion the damages which appellee is entitled to were the excess railroad fares, $3.15, and the telephone charge of seventy-five cents above mentioned, amounting to $3.90. Deducting this amount from the $100 which appellee owes appellant for tele-

graphing, leaves a balance of $96.10 in favor of appellant, which with interest thereon amounts to $128, for which amount appellant is entitled to judgment on its set-off against appellee.

The judgment of the Circuit Court is erroneous and is therefore reversed, but the cause is not remanded. Judgment is entered here under the law (and stipulation filed) in favor of appellant and against appellee for $128 and the costs of this court and the trial court, upon a finding of facts by this court.

*Reversed and judgment here.*