## JOHN P. SQUIRE & others *vs.* WESTERN UNION TELEGRAPH COMPANY.

A telegraph company received a message addressed to a place on the line of another com-
pany, collected pay for its transmission the whole distance, forwarded it to the terminus
of its own line, and delivered it there to the other company, which forwarded it thence to
the place to which it was addressed. The paper on which it was written by the sender
was headed with the name of the first company, beneath which were printed "terms
and conditions on which this and all messages are received by this company for trans-
mission," limiting to a small sum the liability of "the company" for error or delay in the
transmission or delivery of any message, and providing that "no liability is assumed for
any error or neglect by any other company over whose lines this message may be sent
to reach its destination;" subject to which conditions the message was directed to be
sent. In an action by the sender against the second company for negligence in deliver-
ing the message at the place to which it was addressed, *Held*, that the limitation of the
liability of "the company" for error or delay in delivering any message applied to his
contract with the first company only for the service to be rendered on their line alone.

If a telegraph company contract to transmit without any special restriction of their

liability a message accepting an offer to sell certain goods at a certain place for a certain price, and by their negligence in delivering it the sender fails to complete the purchase, he may recover from them, in damages, the difference between the price which by the message he agreed to pay, and the price which he would have been compe·led to pay at the same place in order with use of due diligence to have purchased goods there of the same kind, quantity and quality.

Tort for neglect to deliver a telegraphic message seasonably.

At the trial in the superior court these facts appeared : The defendants were a corporation established under the laws of New York, having a line of electric telegraph to Buffalo from Albany, where it connected with a line of the American Telegraph Company, (a distinct corporation,) which ran from Albany to Boston. The plaintiffs were pork dealers at Boston. On March 19, 1866, the firm of Metcalf & Cushing, pork dealers at Buffalo, having on hand two hundred and fifty dressed hogs, wrote to the plaintiffs by mail, offering to sell the lot, and asking them to reply by telegraph how much they would give for it. The plaintiffs replied by telegraph on Saturday, March 24, naming a price which they would pay for the lot delivered at Boston. Metcalf & Cushing answered by telegraph, declining to sell for that, but naming another price which they would accept for the lot delivered in the cars at Buffalo. Upon receiving this offer, the plaintiffs prepared a reply as follows : " Will take your hogs at your offer; our man will be there Tuesday morning ; " writing it on a piece of paper, beneath these printed words : " Send the following message subject to the above conditions." Above this direction, under the caption " American Telegraph Company," and entitled " Terms and conditions on which this and all messages are received by this company for transmission," were printed certain conditions, among which were these : " Nor is the company to be responsible for any error or delay in the transmission or delivery or non-delivery of any unrepeated message, beyond five dollars, unless " "specially insured and the amount of risk paid for at the time." " No liability is assumed for any error or neglect by any other company over whose lines this message may be sent to reach its destination." The others consisted only of a limitation of the liability of the company in case of errors or delays in transmitting or delivering repeated

messages, and of a disclaimer of liability for any errors in cipher messages. This reply, addressed to " Metcalf & Cushing, Buffalo, N. Y.," and dated " Boston, March 24, 1866," the plaintiffs delivered at the office of the American Telegraph Company in Boston, about half past six o'clock on Saturday evening, for transmission as an unrepeated message not specially insured ; and at the same time they paid to the American Telegraph Company the price for sending it the whole way to Buffalo. That company immediately transmitted the body of the message (not including the printed terms) to the defendants' office in Albany ; and the defendants sent it from Albany to their office in Buffalo, where it arrived about nine o'clock Saturday evening. The defendants' office hours at Buffalo, for receiving and delivering messages, were from eight o'clock in the morning till ten o'clock in the evening. The residences and place of business of the members of the firm of Metcalf & Cushing were all within ten minutes' walk from that office ; and the defendants' agent at Buffalo was acquainted with them. But, through his negligence, the message was not delivered on the evening of its arrival, and was kept in the office during Sunday and until Monday morning, when it was delivered to Metcalf & Cushing at twenty minutes past eleven o'clock. Until eleven o'clock Metcalf & Cushing had been willing and able to close the bargain with the plaintiffs; but at that hour, not having received from the plaintiffs any reply, they sold and delivered the hogs to another party.

The plaintiffs offered to show that, relying on a seasonable delivery of their message to Metcalf & Cushing, and believing that the purchase was thereby completed, they sent a man to Buffalo, early Monday morning, with money to pay for the hogs and authority to receive and forward them to Boston; that he arrived at Buffalo Tuesday morning, but, by reason of the sale of the hogs by Metcalf & Cushing at eleven o'clock on the morning previous, could not obtain them ; that when Metcalf & Cushing sent their message to the plaintiffs on Saturday, naming a price, and when the plaintiffs delivered their message of ac-ceptance at the telegraph office in Boston Saturday evening

and that also on and through Monday, the market price of dressed hogs in Buffalo was higher than the price named by Metcalf & Cushing, and during the same period was higher at Boston than such price increased by what it would have cost to transport the hogs from Buffalo to Boston ; that it continued to rise both at Buffalo and Boston from that time forward until " beyond the time required to bring the hogs to Boston and sell them, as the plaintiffs intended and arranged to do and might and would have done ; " and that " they had made contracts for the sale of hogs which they were bound to fulfil," and " were relying on a part of these hogs to enable them to do this, and, by reason of not getting them, were compelled to buy others at a much higher rate to take their place."

The plaintiffs " claimed damages because of each of said things which they offered to prove as cause of damage as aforesaid, and offered to prove and fix the amount by evidence ; " except that " by an arrangement between the parties no claim was made for damage on account of sending a man to Buffalo ; and the question whether that was an element of damage was not open."

On the subject of damages the court ruled, *pro formâ*, " that any profit which the plaintiffs might have realized by the sale of the hogs which were the subject of the message was not an element of damage, and nothing could be recovered on that account ; and that, upon the offer and claims as made by the plaintiffs, and upon the conditions under which the despatch was sent, they could in no event recover more than five dollars." A verdict was taken for five dollars' damages, and the plaintiffs alleged exceptions ; the parties agreeing that, if the ruling as to damages was erroneous, the verdict should be wholly set aside, and the question of negligence also be open at the new trial.

*A. A. Ranney*, for the plaintiffs.

*G. S. Hale*, for the defendants, cited Sedgwick on Damages, 57 ; Mayne on Damages, 15 ; Smith's Manual of Common Law, 425 ; *Fox* v. *Harding*, 7 Cush. 516 ; *Barnard* v. *Poor*, 21 Pick. 378 ; *Waite* v. *Gilbert*, 10 Cush. 177 ; *Brown* v. *Smith*, 12 Cush. 366 ; *Brown* v. *Cummings*, 7 Allen, 507 ; *Hoey* v

*Felton,* 11 C. B. (N. S.) 142 ; *Stone* v. *Codman,* 15 Pick. 297 *Hadley* v. *Baxendale,* 9 Exch. 341 ; *Wilson* v. *Newport Dock Co* Law Rep. 1 Exch. 177 ; *Le Peintur* v. *Southeastern Railroad Co.* 2 Law Times, (N. S.) 170 ; *Wilson* v. *Lancashire & Yorkshire Railway Co.* 9 C. B. (N. S.) 632 ; *Gee* v. *Lancashire & Yorkshire Railway Co.* 6 H. & N. 211 ; *Hamlin* v. *Great Northern Railway Co.* 1 H. & N. 408 ; *Crouch* v. *Great Northern Railway Co.* 11 Exch. 742 ; *Borries* v. *Hutchinson,* 18 C. B. (N. S.) 445 ; *Great Western Railway Co.* v. *Redmayne,* Law Rep. 1 C. P. 329 ; *Peterson* v. *Ayre,* 13 C. B. 353 ; *Batchelder* v. *Sturgis,* 3 Cush. 201, 204 ; *Griffin* v. *Colver,* 16 N. Y. 489 ; *Abbott* v. *Gatch,* 13 Maryland, 314 ; *Blanchard* v. *Ely,* 21 Wend. 342 ; *New York Academy of Music* v. *Hackett,* 2 Hilton, 217 ; *Stevenson* v. *Montreal Telegraph Co.* 16 Upper Canada, Q. B. 530 : *Kinghorne* v. *Montreal Telegraph Co.* 18 Upper Canada, Q. B. 60 ; *Lane* v. *Montreal Telegraph Co.* 7 Upper Canada, C. P. 23 ; *Landsberger* v. *Magnetic Telegraph Co.* 32 Barb. 530 ; *Lumley* v. *Gye,* 2 El. & Bl. 216, 231–233, 239, 245, 246 ; *Simmons* v. *Southeastern Railway Co.* 7 H. & N. 1002 ; *Ellis* v. *American Telegraph Co.* 13 Allen, 226, and cases there cited ; Marshall on Railways, 88 ; *Collins* v. *Bristol & Exeter Railway Co.* 7 H. L. Cas. 194 ; *S. C.* 11 Exch. 790.

BIGELOW, C. J.   The only question open on these exceptions is as to the rule by which the plaintiffs' damages are to be measured.

We think it clear that they are not limited by any special contract between the parties.   There is no evidence that any such contract was entered into.   The terms and conditions on which the message was- received and transmitted by the company at Boston to the defendants at Albany do not purport on their face to be intended to apply to the service which might be performed by any other company in the transmission of the message beyond the terminus of the line of the company to which it was first delivered.   Not only are these terms and conditions expressly limited to the company first receiving the message, but it is also distinctly stipulated that no liability is assumed for any error or neglect by any other company by which the message may be

sent in order to reach its destination, clearly indicating an intent to apply the special terms and conditions to their own contract only and to the service which they undertook to perform, and not to extend them beyond their own line so as to qualify or control the liability which other companies might assume in the transmission of the message. No evidence was offered at the trial to show that the defendants had in any way restricted their general liability for the service which they undertook to render ; or that they had ever authorized the company in Boston to enter into special stipulations in their behalf; or that the plaintiff had any notice or knowledge of their usages or mode of doing business, or that they did not intend to assume the liability which the law affixed to the employment which they held themselves out to the public as ready to carry on. The case therefore stands as an action for damages for breach of a contract entered into by the defendants through their authorized agent, to which no special stipulations or restrictions on their liability were attached, and on which they are to be held responsible according to the general rules of law.

These rules in their application to damages in actions of this nature are well settled and familiar. A party who has failed to fulfil a contract cannot be held liable for remote, contingent and uncertain consequences, or for speculative or possible results which may have ensued on his breach of duty, although they may be traceable to that cause. The reason is, that damages of such a nature are not the natural or necessary incidents of a contract, and cannot be deemed to have been within the contemplation of parties when they agreed together. A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service would be a serious hindrance to the operations of commerce and to the transaction of the common business of life. The effect would often be to impose a liability wholly disproportionate to the nature of the act or service which a party had bound himself to perform and to the compensation paid and received therefor. The practical rule, founded on a wise policy, and at the same

time consistent with good sense and sound equity, is that a party can be held liable for breach of a contract only for such damages as are the natural or necessary, and the immediate and direct results of the breach, — such as might properly be deemed to have been in contemplation of the parties when the contract was entered into, — and that all remote, speculative and uncertain results, as well as possible profits and advantages and other like consequences which might have arisen from the fulfilment of the contract must be excluded, as forming no just or legitimate basis on which to determine the extent of the injury actually caused by a breach. *Fox* v. *Harding*, 7 Cush. 516. *Cutting* v. *Grand Trunk Railway Co.* 13 Allen, 381–384, and cases cited. In the latter case it was held that a carrier who had negligently delayed to transport and deliver goods intrusted to him, was liable in damages for the difference in their value at the time when and place where they ought to have been delivered, and their market value at the same place on the day when they were delivered. This was held to be the measure of damages, because such a change in value was the direct result of the delay in performing the contract, and might well be supposed to have been in contemplation of the parties when the contract was made. We can see no reason why an analogous rule is not applicable to the case before us. The defendants as a contracting party are liable for the injury actually caused by their breach of duty. There is nothing in the nature of the business, which they undertake to carry on, that should exempt them from making compensation for any neglect or default on their part. *Ellis* v. *American Telegraph Co.* 13 Allen, 226. The only question then is as to the effect of the application of the general rule of damages already stated to the contract between the parties. This necessarily depends on the subject matter. The defendants undertook to transmit a message which on its face purported to be an acceptance of an offer for the sale of merchandise. The agreement was to transmit and deliver it with reasonable diligence and despatch, having reference to the ordinary mode of performing similar service by persons engaged in the same business The natural consequence of a failure to fulfil the contract was

that the party to whom the message was addressed, not receiving a reply to his offer to sell the merchandise in due season, would dispose of it to another person; that the plaintiff might be unable to procure an article of like kind and quality at the same price, and in order to obtain it would be obliged to pay a higher price for it in the market than he would have paid if the prior contract for its purchase had been completed by the seasonable delivery of his message by the defendants. The sum therefore which would compensate the plaintiffs for the loss and injury sustained by them would be the difference, if any, in the price which they agreed to pay for the merchandise by the message which the defendants undertook to transmit, if it had been duly and seasonably delivered in fulfilment of their contract, and the sum which the plaintiffs would have been compelled to pay at the same place in order by the use of due diligence to have purchased the like quantity and quality of the same species of merchandise. The case must be tried anew, and if it is found that the defendants did not fulfil their contract, the damages must be assessed according to the rule above stated. *Exceptions sustained.*