BREWSTER *v*. WESTERN UNION TELEGRAPH COMPANY.

Opinion delivered October 15, 1898.

1. TELEGRAM—DAMAGES FOR FAILURE TO DELIVER.—The measure of the damages to be recovered for the negligent delay of a telegraph company in delivering a message directing the purchase of a certain number of cattle of a specified grade is the difference between the contract price of the cattle and that which it would have been necessary to pay at the same place in order by due diligence, after delivery of the telegram, to purchase the same number and grade of cattle. (Page 539.)

2. SAME.—In an action by a firm to recover damages of a telegraph company for failure to deliver promptly a message to a member of the firm directing him to purchase a certain number of cattle, on which he held an option, provided they came up to a specified grade, the market value of the cattle at the place where they were to be purchased was not proved, nor was it shown that the cattle would have come up to the required grade. *Held*, that the court properly instructed the jury that under the facts the plaintiffs could recover only the price paid for the telegram. (Page 540.)

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

STATEMENT BY THE COURT.

The appellants, A. Brewster, W. Z. Tankersley, and J. M. Fain, were partners under the firm name of J. M. Fain & Co., and engaged in the business of buying and selling cattle. Brewster and Tankersley lived at Pine Bluff, Ark., while Fain made his home at Jennings, La. On the 8th day of May, 1895, Fain made, for said J. M. Fain & Co., an agreement with one T. D. Langley to purchase of said Langley two hundred head of cattle at $12 per head; but this contract was subject to the approval of Brewster and Tankersley, the partners of Fain. It was agreed between Langley and Fain that Fain should communicate with his partners, and notify Langley if said contract was accepted on or before noon of May 14, 1895, and that, if Langley was not notified of the acceptance within that time, said contract would be declared off. Fain at once wrote to Brewster and Thankersley, and informed them of the terms of

the contract. They, on the 13th of May, delivered to the defendant company a message addressed to Fain, at Jennings, La., directing and authorizing him to close the trade for the two hundred head of cattle, and paid said company the sum of 75 cents for the transmission of said message. The company failed to deliver the telegram until 7 o'clock p. m. of the 14th of May, 1895. The time given for the acceptance of the contract expired before the telegram was delivered, and plaintiffs failed to get the cattle. Appellants brought this action against the telegraph company to recover damages for negligently failing to deliver said telegram in due time. On the trial in the circuit court, the presiding judge directed the jury to return a verdict in favor of plaintiffs for only the price paid for the telegram. Plaintiffs appealed from the judgment rendered upon the verdict thus returned. The other facts appear in the opinion.

*Bridges & Wooldridge*, for appellants.

Damages are recoverable for negligence of a telegraph company in the transmission and delivery of messages. 53 Ark. 439; Crosw. Electricity, §§ 574, 576, 578, 586. The measure of damages in this case is the difference between the amount of the offer and the market value of the cattle when the offer expired. 37 Ia. 220; 60 Me. 26; 64 Wis. 531; 16 N. Y. 489; 44 N. Y. 263; 98 Mass. 239; Crosw. Elec. § 625; 66 Miss. 161; 67 Miss. 386; 58 Ark. 29; 19 S. W. 336; 31 S. W. 432; 39 S. W. 1021; 19 S. W. 554; 33 S. W. 1025; 42 S. W. 119; Thomp. Elec. §§ 335–6–7 and 8; Gray, Communication by Teleg. § 85; 25 Am. & Eng. Enc. Law, 848; 31 Fed. 134; 2 Thomps. Neg. 848; 90 Ga. 254. The second instruction given for defendant was erroneous. Defendant was liable for any damages of which its negligence was the proximate cause. Thomps. Elect. §§ 346, 318; Gray, Com. by Teleg. § 99; 25 Am. & Eng. Enc. Law, 854; 16 *id.* 428, 433; 61 Md. 74, 619; 2 Thomp. Neg. 1083.

*Rose, Hemingway & Rose*, for appellee.

There was no error in the instructions given for appellee. Plaintiffs were bound to prove the amount, as well as the fact, of their damage. Sand. & H. Dig., § 5761. The evidence fails to furnish data whereby the jury could assess any dama-

ges.    (1)    The loss must be one which would probably not have occurred but for the act complained of.    57 Ark. 402. (2)    There must have been a binding contract for the sale of the cattle.    (3)    There must be proof of the market value of cattle directly after the offer expired.    There was nothing in the telegram to put the company on notice of its importance. The damages recoverable in such a case as plaintiffs allege would be only such as were the natural and necessary consequences of the act complained of, and such as they might, by reasonable effort, have avoided.    Broom's Leg. Max. 201; 1 Sedg. Dam. §§ 201, 202, 205; 3 Suth. Dam. 300; 1 *id.* chap. 6; 106 Mass. 468; 45 N. Y. 744; 66 N. Y. 92, 98; 7 Greenl. (Me.) 51; 83 Ala. 542; 80 Fed. 878, 880; 105 U. S. 224, 229; 2 Greenl. Ev. 267, note 3; 9 Ark. 394, 401, 402, 403; 45 N. Y. 744; 98 Mass. 239.

RIDDICK, J., (after stating the facts.)    This is an action against a telegraph company to recover damages alleged to have been caused by negligence on the part of said company in transmitting and delivering a telegram.    The plaintiffs claim that, by reason of the negligence of the defendant company in the matter of delivering said telegram, they lost the right to purchase a certain 200 head of cattle from one Langley.    It is conceded that the facts established make out a case of negligence against the telegraph company, and the only real controversy between the parties relates to the question of damages. The circuit judge, on motion of the defendant, instructed the jury that the plaintiffs under the facts could recover only the price paid for the telegram; and whether this was a correct ruling is the question we are asked to consider.

Now, the contract which plaintiffs claim to have made with Langley gave them an option to accept and purchase a lot of cattle owned by him at $12 per head, this option to expire at noon on the 14th day of May, 1895.    If the telegram had been received in due time, and plaintiffs had accepted the offered purchase, they would at that time have owned the cattle, and would have paid out the contract price thereof.    The telegram was delivered on said day, but not until 7 o'clock p. m., some hours after the time allowed for the acceptance of the contract

had expired; so plaintiffs lost the right to purchase the cattle, but retained the money they had agreed to pay for the same. It is manifest, therefore, that plaintiffs were not injured unless on the 14th day of May, at the time the telegram was delivered, the market value of cattle of the grade purchased was at that place greater than the contract price, or, unless, on account of the scarcity of cattle, or for some other reason, plaintiffs could not, by the use of due diligence, after the delivery of the telegram, have purchased the like number and grade of cattle for the contract price. The law requires that a party should exercise due diligence to avoid injury to himself, and the measure of damages in such a case is the difference between the contract price of the cattle and that which plaintiffs would have been compelled to pay at the same place in order by due diligence, after delivery of the telegram or notice of the failure to deliver it, to purchase the same number and grade of cattle. It is a matter of no moment that some days subsequent to the delivery of the telegram there was a rise in the market value of cattle, and that, if plaintiffs had purchased cattle at the contract price, they might have obtained profits from such rise in value; for the law does not permit the recovery of such uncertain and speculative damages. *Squire* v. *Western Union Tel. Co.*, 98 Mass. 232; *True* v. *International Tel. Co.*, 60 Me. 9; *Hibbard* v. *Western Union Tel. Co.*, 33 Wis. 558; *Western Union Tel. Co.* v. *Hall*, 124 U. S. 444; *Western Union Tel. Co.* v. *Fellner*, 58 Ark. 29.

Applying the rule above stated to the facts of this case, it will be seen that plaintiffs did not prove more damages than they recovered; for they did not show what the market value of the cattle was on the 14th day of May, the time when their right of action was complete, but undertook to establish the value thereof on the 16th day of May, and afterwards. We need not discuss this question at length, for the evidence bearing on that point was subject to another defect still more radical. No witness had seen the 200 head of cattle that Langley agreed to sell at $12 per head, or knew what their market value was. Fain, the only witness who testified concerning that matter, said that he saw about fifty head of the cattle. "I saw enough of the cattle," he says, "to close the trade, provided

all the cattle came up, which they did or would have done."
But this statement that the cattle "did or would have come up"
to the grade required is pure guess work on the part of the
witness, for he had not seen them.    Having seen only a fourth
of the cattle, he could not tell what the market value of the two
hundred head was, either on the 14th of May, or at any other
time, and could not show that plaintiffs were injured by failing
to purchase said cattle at the price named in the contract.

Not only is it true that the evidence fails to show that the
market value of these cattle on the 14th day or May exceeded
their contract price, but the conduct of plaintiff Fain indicates
that he even was doubtful as to the matter.    Plaintiffs do not,
as we understand, claim that there was any sudden rise in the
value of cattle between the time the telegram should have been
delivered and the time when it was delivered, for those two pe-
riods were separated only by a short interval.    They claim that
they had secured on the 8th day of May the right to purchase
these cattle on or before noon of May 14th at $12 per head, and
that this was a valuable right; that the value of cattle com-
menced to advance about the 1st day of May, and continued to
rise for several months, and that these cattle on the 14th day
of May, at the time the option to purchase expired, were worth
much more than the contract price.    But Fain was a member
of the firm, and it is not denied that he had the authority to
purchase cattle without consulting his absent partners.    Indeed,
he seems to have done most of the buying for the firm.    This
being so, it seems reasonable to believe that, if he had been
fully convinced that the market value of the cattle was much
greater than the contract price, he would not have suffered the
option to expire, but would have closed the trade, although he
had not received the telegram.    Yet he declined to assume the
responsibility and accept the offered sale.    This indicates that
he did not feel sure that the cattle were at that time worth
more than the price named, but desired to purchase with a view
to future profits.    It indicates that he was not certain, at the
time he permitted the option to expire, that there would be a
profit in such purchase, and desired his partners to share the
responsibility of making it.    Afterwards, when the price of
cattle rose, he saw the loss his firm had sustained by not mak-

ing the purchase, and sued the telegraph company to recover damages. But it was not within the meaning of the contract made with the defendant company that it should in any event be liable for such uncertain and speculative damages, and they cannot be recovered.

Again, it is not certain that plaintiffs would have purchased the cattle, even had the telegram been delivered in due time. This is not a case where a plaintiff has telegraphed his agent to go in the market and purchase a certain number of cattle, and afterwards the price of cattle rises, and, by reason of a delay in delivering such message, the agent is compelled to pay a greater price than he would have paid had the message been promptly delivered. The purchase which plaintiffs say they lost here was the purchase of a certain lot of cattle. The contract with Langley giving them an option to purchase such cattle was not in writing, and nothing had been paid on it, and it is apparent from the evidence that it amounted only to an agreement that Langley would sell a certain 200 head of cattle owned by him at $12 per head, and that plaintiffs would take the cattle at that price if the absent partners approved the purchase, and if the cattle came up to a certain grade or standard. In other words, Langley did not agree absolutely to sell 200 head of cattle of a certain grade, but only that he would sell a certain 200 head of cattle owned by him, with an option on the part of Fain to reject the offer if his partners failed to approve, or if the cattle did not come up to a certain grade. The evidence shows that the other partners approved the purchase, but it does not show that the cattle offered by Langley came up to the grade required. It is possible that plaintiffs could have established this fact by the testimony of Langley, or of some other witness who knew the condition of the cattle, but they did not do so. Fain, as he states, "saw enough of the cattle to close the trade, provided all the cattle came up." We understand from this that one of the conditions of the contract was that the cattle should come up to a certain grade, and that, before closing the trade and paying the purchase money, he would have ascertained that fact by an inspection of the cattle. He made no such inspection, and introduced no evidence to show the grade of the cattle, but asks a judgment against the defendant company upon the bare

supposition entertained by him that such cattle would have come up to the grade required, and that he would have accepted the offered sale, had the telegram been delivered in due time.  As he had seen only a small portion of the cattle, he not only could not know that the cattle would have come up to the grade required, but he did not even know that Langley owned such cattle.  The allegation that plaintiffs would have purchased the cattle had the telegram been delivered in time rests therefore upon conjecture, and is not made sufficiently certain by the proof to sustain a judgment for damages greater than recovered.  *Western Union Tel. Co.* v. *Fellner,* 58 Ark. 29; *Western Union Tel. Co* v. *Hall,* 124 U. S. 444.

For the reasons stated, we conclude that the judgment of the circuit court is right, and the same is affirmed.