WESTERN UNION TELEGRAPH COMPANY v. S. H. WOODS.

Decided December 14, 1910.

**Telegraph Company—Negligent Delay—Loss of Purchase—Measure of Damage.**

In the absence of evidence that a telegraph company had notice at the time a message was received for transmission, that the personal property on which the sender of the message had an option and which the message instructed the sender's agent to buy, was to be shipped to and sold at some other place than the place where it was purchased, the measure of damage for failure to deliver the message whereby the option was lost, would be the difference between the contract price and the market price at the place of purchase, and not at some other place, unknown to the telegraph company, to which the purchaser intended to ship the property in the event he had bought it.

Appeal from the County Court of Nueces County.   Tried below before Hon. Walter F. Timon.

*Webb & Goeth* and *M. S. Hallam,* for appellant.—The telegraph company can be held liable only for such damages as ordinarily and naturally result from breach of its contract, or as were reasonably within the contemplation of its agents at the time the message was received for transmission; and in the absence of knowledge or notice to the appellant that said bull would be taken to or was destined for San Diego, Texas, the value or market value of said bull at said place can not be considered in estimating such damages, but the plaintiff could only recover the difference between the contract price and the market value of said bull at the place of purchase, towit, San Antonio.   Western Union Tel. Co. v. Kuykendall, 99 Texas, 323; Western Union Tel. Co. v. Ayers, 93 S. W., 199; Western Union Tel. Co. v. True (Sup.), 106 S. W., 315; Gulf, C. & S. F. Ry. Co. v. Cunningham, 113 S. W., 767; Gulf, C. & S. F. Ry. Co. v. Pettit, 22 S. W., 761; Gulf, C. & S. F. Ry. Co. v. Gilbert, 22 S. W., 760; Western Union Tel. Co. v. Thomas, 26 S. W., 117; Elliott v. Western Union Tel. Co., 75 Texas, 18.

*J. C. Scott* and *H. M. Holden,* for appellee.—Appellee gave appellant notice of the main purpose of the telegram in question, which was sufficient to put it upon inquiry as to the attendant details; and it is chargeable with all it could have learned by such inquiry.   Western Union Tel. Co. v. Edsall, 74 Texas, 329; Western Union Tel. Co. v. Sheffield, 71 Texas, 570; Western Union Tel. Co. v. Adams, 75 Texas, 532; Western Union Tel. Co. v. Potts, 82 Texas, 545; Western Union Tel. Co. v. Bowen, 84 Texas, 477; Texas & Western Tel. Co. v. Mackenzie, 36 Texas Civ. App., 178; Mitchell v. Western Union Tel. Co., 5 Texas Civ. App., 527.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages instituted by appellee, alleged to have accrued on account of the failure to deliver a telegram sent by appellee, from Alice, Texas, to his step-son, Robert Spence, at San Antonio, Texas, as follows: "Go to Frost's bank and get

money." It was alleged that appellee desired to purchase a bull and had made arrangements for Spence to buy one for him, and that the telegram was sent in reply to one saying, "Bought, will need money at once," and if his telegram had been delivered to Spence the purchase of the bull for $175 would have been consummated, and the bull would have been shipped to San Diego, Duval County, Texas, where he would have been of the reasonable market value of $500; that $10 would have paid freight on the bull to San Diego; and appellee was damaged in the sum of $315 by the failure to purchase the bull, which was caused by the failure to deliver the message sent by him. The cause was tried without a jury, and judgment was rendered for appellee for $315.

We think the evidence was sufficient to show a market value for the bull at San Diego; but what if the market value of the bull was proved to be a certain amount at San Diego, how can appellant be held liable for damages measured by such market value? It is not pretended that the agent of appellant, either at San Antonio where the bull was contracted for, or at Alice where appellee received the message of Spence and where he answered it, knew that the bull was to be shipped to San Diego, and any other point of ultimate destination for the bull was as much in contemplation of the parties as San Diego. There is not a word of testimony that tends to show that the agent at Alice or the agent at San Antonio knew where appellee lived, or that he was a breeder of fine cattle at some point and desired to ship the bull to that point. Appellee did not state that he told the operator at Alice that the bull was to be shipped to San Diego, or to any other place, but merely told him that he "had a deal on for a bull, and had to get the money there (at San Antonio) that evening." The agent knew, therefore, that it was important to get the message to San Antonio with promptness or appellee would lose the chance to buy a bull that he was anxious to purchase, but it could not have been within the contemplation of the agent that the bull would be shipped to some point distant from San Antonio, and that appellee would lose the difference between the value of the bull at that point and its value at San Antonio.

The circumstances necessary to create the case for damages relied on by appellee were wholly unknown to appellant, and it could not have been in contemplation that any damages but those that would arise at San Antonio from a failure to deliver the message would be demanded, and he could not have contemplated damages would be demanded that might arise from the high market value of the bull at some undisclosed point. If it had been customary or usual for bulls to be bought in San Antonio and shipped to San Diego, or even Alice, appellant might be charged with notice that the market value at those places would control in fixing damages for negligence, but no such custom was shown, and there was not a single circumstance tending to notify appellant that the bull would be shipped from San Antonio to any point. All the damages that could have been in contemplation of the parties were those likely to arise in San Antonio by a failure to have the message delivered promptly at that place.

The measure of damages in this case under the facts in evidence is the difference between the contract price and the market price at the place of purchase on the day on which the option expired. In the case of Brewster v. Western Union Tel. Co., 47 S. W., 560, a partner had secured an option on cattle, which was lost by a failure to deliver a telegram from another partner. No money had been paid on the contract price. The Supreme Court of Arkansas held: "It is manifest, therefore, that plaintiffs were not injured unless on the 14th day of May, at the time the telegram was delivered, the market value of cattle of the grade purchased was at that place greater than the contract price, or unless, on account of the scarcity of cattle or for some other reason, plaintiffs could not, by the use of due diligence after the delivery of the telegram, have purchased the like number and grade of cattle for the contract price. The law requires that a party should exercise due diligence to avoid injury to himself, and the measure of damages in such a case is the difference between the contract price of the cattle and that which plaintiffs would have been compelled to pay at the same place in order, by due diligence, after delivery of the telegram or notice of the failure to deliver it, to purchase the same number and grade of cattle." To the same effect are Squire v. Western Union Tel. Co., 98 Mass., 232, and Western Union Tel. Co. v. Hall, 124 U. S., 444. It follows that the measure of damages in this case would be the difference between the price agreed to be paid for the bull in San Antonio and the price that appellant would have been compelled to pay for a bull of like grade in San Antonio. Western Union Tel. Co. v. Brown, 84 Texas, 54; Western Union Tel. Co. v. Carver, 15 Texas Civ. App., 547.

It may be that it will develop on another trial, under proper allegations, that a bull of the same grade and character could not be purchased in San Antonio, and consequently there was no market value in that place, in which event the reasonable value of the bull delivered in San Antonio, wherever purchased, would form the basis for an ascertainment of the damages.

The value of the bull in San Diego could not form the basis for arriving at any damages sustained by appellee, and for that reason testimony on that subject was improperly admitted in evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*