# Veitch *v.* Western Union Telegraph Co.

## *Failure to Deliver Telegram.*

Decided May 16, 1912. 59 South. 352.)

1. *Telegraphs and Telephones; Negligent Transmission; Character of Message.*—A telegraph message reading "Book the 100 tons, 8% meal, twenty-five," was sufficient to give notice that it related to a business transaction of sufficient importance to be closed by telegraph, and that a pecuniary loss would probably result from a failure to promptly transmit and deliver the message.

2. *Same.*—A telegraph company is liable for damages naturally and proximately resulting from its negligent failure to transmit and promptly deliver, though it was not informed by the terms of the message, or otherwise, of its meaning, or any urgency for prompt service.

3. *Same; Delay in Delivery; Damages.*—Where a sender of a telegram lost an opportunity to close a contract of purchase by a failure of the company to promptly transmit and deliver a message, the damages recoverable is the difference between the price named in the proposed contract and the higher price that the sender was compelled to pay to obtain a similar contract, on being informed, or having had reasonable time to receive notice, of the failure to deliver the message in time for it to have accomplished its purpose.

4. *Same; Evidence.*—Where the action was for damages for failure to promptly deliver a telegram, the questions as to what was a reasonable time to be allowed the plaintiff to get information of a failure to deliver his message, and as to what constituted due diligence on the part of the sender to obtain an obligation similar to the one lost by the failure to deliver, were for the jury, and the court erred in refusing to allow inquiry as to what was the market price of the commodity which he intended to purchase for the first half of the month in which the message was sent.

APPEAL from Perry Circuit Court.

Heard before Hon. B. M. MILLER.

Action by Carlos Veitch against the Western Union Telegraph Company, for damages for failure to prompt-

ly transmit and deliver a message. Judgment for defendant and plaintiff appeals. Reversed and remanded.

W. F. HOGUE, and CLIFTON C. JOHNSON, for appellant. The loss suffered in cases of this character is the difference between the contract price, and the ·marekt price at the time and place of delivery.—*Young v. Cureton*, 87 Ala. 727; *Penn v. Smith*, 104 Ala. 405. The purpose is compensation to the injured party for the loss sustained.—*Pugh v. McRae*, 2 Ala. 393. The message charged defendant with notice that it looked to the consummation at once of a contract for future delivery either as to payment or shipment, and this would be true, even though it was in cipher.—*Daugherty v. A. U. T. Co.*, 75 Ala. 168; s. c. 89 Ala. 191; *W. U. T. Co. v. Way*, 83 Ala. 552; *Guilford & Deal v. W. U. T. Co.*, 50 South. 112. The defendant was not bound to know all the details of the transaction.—Authorities supra, and 27 A. & E. Enc. of Law, 1063. If, as a matter of fact, there was a failure to deliver altogether or to deliver with due diligence, the fact that the message must be delivered within a certain time, in order to consummate the contract, did not excuse the defendant, and these were qustions for the jury.—*W. U. T. Co. v. Hill*, 50 South. 248; *Same v. Griffith*, 50 South. 91; *Same v. Jackson*, 50 South. 316. The burden to show that the damages could have been minimized, was on the defendant, and it offered no proof.—*W. U. T. Co. v. Bowman*, 141 Ala. 175; *Ala. S. & I. Co. v. Kratzer I. Co.*, 56 South. 767; *Murrell v. Whiting*, 32 Ala. 54. Under these authorities, it must be held that the court erred in excluding evidence offered by plaintiff, and excepted to.

GEORGE H. FEARONS, RAY RUSHTON, and WILLIAM M. WILLIAMS, for appellee. The court did not err in ex-

cluding questions purporting to show the market value of 8% cotton seed meal f. o. b. cars at Uniontown, Alabama, during the first half of November, 1909.—*Squire v. W. U. T. Co.,* 93 Am. Dec. 157; *W. U. T. Co. v. Hall,* 124 U. S. 444; *Wallingford v. W. U. T. Co.,* 53 S. C. 410; *Mandville v. W. U. T. Co.,* 37 Ia. 214. The plaintiff· was damaged only as to the value of the option on the day and at the place it was destroyed by the negligence of the telegraph company.—148 N. Y. 382; 66 N. Y. 92; 59 N. Y. Ap. Div. 199, and authorities supra. As applied to this case the damage would be the difference between the option price, and the market price for November delivery on Aug. 29, 1909.—60 Me. 9; 47 S. W. 560. The correct rule is the difference between the contract price and the market value at the time and place of delivery at the time of the breach of the contract.— 49 N. H. 376; 48 Atl. 1087, and authorities supra; *Gate City Cotton Mills v. Rosenau H. Mills,* 159 Ala. 414; 169 Pa. 463; 60 S. W. 1037. The question sought to elicit special damages, and it does not appear that the company had any notice of the particular purpose for which the telegram was sent.—*Western Union Tel. Co. v. Reed,* 57 So. Rep. 82; *Daugherty v. Am. Union Tel. Co.,* 75 Ala. 168; *American Union Tel. Co. v. Daughtery,* 89 Ala. 186; *Western U Tel. Co. v. Way,* 83 Ala. 542; *Kelly v. Western U. Tel. Co.,* 39 Hun. (N. Y.) 158; *Cahn v. Western U. Tel. Co.,* 48 Fed. 810; Jones on Telegraph & Telephone Companies, p. 503.

WALKER, P. J.—This was an action by the appellant to recover damages claimed to have been sustained by him in consequence of the alleged negligent failure of the appellee (the defendant below) promptly to transmit and deliver a telegram, dated Birmingham, Ala., September 25, 1909, signed by the appellant, and

addressed to Farmers' Cotton Oil & Trading Company, Uniontown, Ala., which was in the following words: "Book the hundred tons eight per cent. meal, twenty-five." The complaint alleged, and there was evidence tending to prove, that the addressee, which was a corporation doing business at Uniontown, on the 23d day of September, 1909, offered to sell to the plaintiff 100 tons of 8 per cent. cotton seed meal at the price of $25 per ton f. o. b. cars at Uniontown, Ala., for shipment during the first half of November, 1909, said offer to hold good and to be accepted by the plaintiff not later than 10 o'clock a. m., September 25, 1909; that about 8:15 o'clock a. m. of that day the defendant, at its office in Birmingham, Ala., received from the plaintiff, and for a reward undertook to transmit and deliver, the telegram above described. The evidence also tended to prove that the defendant had no knowledge or information as to the subject of the telegram, except such as was afforded by its terms; that the telegram was transmitted to Uniontown by 9:30 o'clock a. m. of the day on which it was received for transmission, but did not reach the addressee until about 1 o'clock in the afternoon of that day, though its office was within 100 yards of the defendant's office at Uniontown, and that late that evening the addressee sent a telegram to the plaintiff, notifying him that his order would not be booked, because it was received too late, which telegram was received by the plaintiff late in the evening of the next day, which was Sunday; that the plaintiff was ready and willing to receive and pay for the hundred tons of cotton seed meal during the first half of November, 1909, pursuant to the terms of the original offer of the addressee; and that the latter was able to carry out the contract contemplated by such offer, or to respond in damages for a

wrongful refusal to do so. In consequence of the action of the court in sustaining objections of the defendant to questions propounded by the plaintiff to witnesses who were shown to be qualified as experts as to the market value of cotton seed meal at Uniontown during the time from September 25, 1909, up to and including the first half of November, 1909, the plaintiff took a nonsuit, with leave to file a bill of exceptions. One of those questions, to the sustaining of an objection to which the plaintiff duly excepted, was: "What was the market value on the Uniontown market of 8 per cent. cotton seed meal f. o. b. cars at Uniontown, Alabama, for the first half of November shipment, 1909, from the 25th day of September, 1909, up to and including the first half of November, 1909?" In this connection, the plaintiff stated to the court that he expected to show by the answer of the witness to the question, if he had been allowed to answer it, that such market value ranged from $26 up to $28.50 per ton during such time. This appeal presents for review the rulings of the court on the objections to such questions.

The terms of the message were such as to give notice that it related to a business transaction deemed of sufficient importance by the sender of it to induce him to avail himself of the facilities for speedy communication offered by the defendant, and that substantial pecuniary loss would probably result from a failure promptly to transmit and deliver it, and thus to impose upon the defendant liability for damages directly resulting from its negligent failure to perform the duty assumed by the acceptance of it for transmission and delivery.— *Postal Telegraph & Cable Co. v. Lathrop,* 131 Ill. 575, 23 N. E. 583, 7 L. R. A. 474, 477, 19 Am. St. Rep. 55; *Fererro v. Western Union Telegraph Co.,* 9 App. D. C. 455, 35 L. R. A. 548; *Bailey v. Western Union Tele-*

[Veitch v. Western Union Telegraph Company]

*graph Co.,* 227 Pa. 522, 76 Atl. 736, 19 Ann. Cas. 895. Its mention of "the" hundred tons of meal suggested that it was in reference to a matter which already had been the subject of a negotiation or proposal between the parties; and the use of the word "book," in the connection in which it is found, was some indication that a prompt delivery of the message might have the effect of consummating a contract entitling the sender to a future shipment or delivery of the meal referred to.

Even without such hints, given by the words of the message itself, that its prompt delivery would result in concluding a contract which the sender desired to make, under the rulings in this state, the defendant would be liable for the damages naturally and proximately resulting, in the usual course of things, from its negligent failure promptly to transmit and deliver the message, whether or not, by the terms of the message or otherwise, it was informed of its meaning, or of the special urgency for prompt service in reference to it.—*Daughtery v. American Union Telegraph Co.,* 75 Ala. 168, 51 Am. Rep. 435; *Western Union Telegraph Co. v. Way,* 83 Ala. 542, 4 South. 844; *American Union Telegraph Co. v. Daughtery,* 89 Ala. 191, 7 South. 660. There was evidence tending to show that the defendant was lacking in due diligence in the performance of the duty assumed by it, and that the result of its negligence was to deprive the plaintiff of the opportunity of accepting in time the offer of the addressee to sell him 100 tons of 8 per cent. cotton seed meal at the price of $25 per ton f. o. b. cars at Uniontown, for shipment during the first half of November, 1909. This brings us to the inquiries as to the damages recoverable by one who has been so deprived of the opportunity of securing the benefits of such a contract, and as to whether the evidence which was excluded by the rulings of the court below was ad-

missible in support of a claim that such damages had been sustained.

What the plaintiff lost by the delay in the delivery of his message was the obligation of a responsible party to deliver to him or for his use at a designated place, within a stated future period, and at a price agreed upon, a specified amount of a certain commodity. One who is so deprived of the opportunity of consummating a trade which he desires to make is subjected to pecuniary loss, if he cannot secure a like obligation of the same or another responsible party at the same or a lower price for the commodity. Another, whose breach of duty to him caused this loss, is liable to him for the amount of it. The question of the rule to be applied in ascertaining the amount for which the party so in default should be held liable was presented in the case of *Squire v. Western Union Telegraph Co.*, 98 Mass. 232, 93 Am. Dec. 157, which, in some of its principal features, is similar to the one now under consideration. In the opinion rendered in that case, the court, after mentioning the general rule that a contracting party is liable for the actual injury caused by his breach of duty, said: "The only question, then, is as to the effect of the application of the general rule of damages already stated to the contract between the parties. This necessarily depends on the subject-matter. The defendants undertook to transmit a message which, on its face, purported to be an acceptance of an offer for the sale of merchandise. The agreement was to transmit and deliver it with reasonable diligence and dispatch, having reference to the ordinary mode of performing similar service by persons engaged in the same business. The natural consequence of a failure to fulfill the contract was that the party to whom the message was addressed, not receiving a reply to his offer to sell the merchandise in

due season, would dispose of it to another person; that the plaintiff might be unable to procure an article of like kind and quality at the same price, and, in order to obtain it, would be obliged to pay a higher price for it in the market than he would have paid if the prior contract for its purchase had been completed by the seasonable delivery of his message by the defendants. The sum, therefore, which would compensate the plaintiffs for the loss and injury sustained by them would be the difference, if any, in the price which they agreed to pay for the merchandise by the message which the defendant undertook to transmit, if it had been duly and seasonably delivered in fulfillment of their contract, and the sum which the plaintiffs would have been compelled to pay at the same place in order, by the use of due diligence, to have purchased the like quantity and quality of the same species of merchandise." The ruling made in that case has been followed by the Supreme Court of the United States in the case of *Western Union Telegraph Co. v. Hall,* 124 U. S. 444, 457, 8 Sup. Ct. 577, 31 L. Ed. 479, and the views expressed in the above quotation have generally been recognized as correct.—37 Cyc. 1762.

In the argument made by the counsel for the appellee, the decisions above cited are referred to, and no question is made as to their soundness. As we understand the contention advanced in that argument, it is that the court was warranted in sustaining the objections to the questions asked, because of their failure to limit the inquiry made to the price which the plaintiff would have been compelled to agree to pay to obtain a similar contract at the time and place of the contract which he would have secured if his message had been seasonably delivered by the defendant. So to confine the inquiry would have the effect of requiring the plain-

tiff's loss to be measured by the difference between the contract price and the price named in a similar contract which another might have secured at a time when the plaintiff had no reason to suppose that there was any occasion for him to try to make another trade, in lieu of the one he lost in consequence of the defendant's delay in the delivery of his message accepting the offer already made him. The plaintiff could not have been expected to make another contract for the commodity he desired to obtain until after he was informed of the defendant's failure to deliver his message in time to accomplish the purpose of it. This proposition finds support in the statement embodied in the above quotation, to the effect that the damages recoverable are measured by the difference between the contract price and "the sum which the plaintiff would have been compelled to pay at the same place in order, by the use of due diligence, to have purchased the like quantity and quality of the same species of merchandise." In similar cases, in which a question has arisen as to what is required of one who is complaining of a loss of a bargain in consequence of a negligent failure of a telegraph company promptly to transmit or deliver a message, his duty in that regard has been stated to be "to use reasonable diligence after notice of the failure" to deliver the message (*Tru v. International Telegraph Co.*, 60 Me. 9, 11 Am. Rep. 156), or "to use due diligence after notice of such failure" (*Brewster v. Western Union Telegraph Co.*, 65 Ark. 537, 47 S. W. 560), or to make another similar trade "at the market price which could have been obtained at the earliest day thereafter."—*Wallingford v. Telegraph Co.*, 53 S. C. 413, 31 S. E. 276.

The expressions quoted, considered in the light of the situation in which one is apt to find himself in the event of his loss of a bargain by another's failure to deliver a

message for him, suggest the contrast between the nature of his claim because of such default and what his claim against the addressee in the message would have been if the latter's offer had been duly accepted. The defendant's failure to make timely delivery of the plaintiff's message did not impose upon the former the obligation which would have been incurred by the addressee in the message if its offer had been accepted according to its terms, nor require the damages recoverable of the defendant to be measured by a rule based upon a supposed analogy to the one which would have been applicable in the case of a breach of the executory contract which the plaintiff lost as the result of the delay in the delivery of his message. To measure the damages recoverable in such a case as the present one by the difference between the contract price and the price at which the commodity in question could have been similarly contracted for at the time and place of the making of the contract with the addressee, if it had been concluded by a prompt delivery of the message, often would amount to saying that the sender of the message was charged with the duty of taking action to prevent loss as far as possible before he could have been aware of any occasion or necessity for his taking such action. The facts of the present case illustrate the truth of this statement. The evidence shows that the first notice the plaintiff had of the failure of his message to be delivered in time was conveyed by a message which was sent to him the same day, but which was not received by him until late in the evening of the next day, which was Sunday. It was not then possible for him to make a new contract for the cotton seed meal he desired before the next secular day.

The rule for the measure of damages which is deducible from the decisions above referred to, and the reason-

ableness of which commends itself to us, is that the plaintiff, in such a case as the present one, is entitled to recover as damages for the loss of a bargain so occasioned the difference between the price named in the contract which would have been concluded by the prompt delivery of his message and the higher price which he would have been compelled to agree to pay in order, by the exercise of due diligence after being informed, or having had reasonable time to receive notice, of the failure to deliver his message in time for it to accomplish its purpose, to obtain a similar contract binding a responsible party for the future delivery of the like quantity and quality of the commodity to which his message referred.

The question as to what was a reasonable time to be allowed the plaintiff to get information of the failure to deliver his message, and as to what constituted due diligence on his part in obtaining another similar obligation of a responsible party, were questions, not for the court to pass upon, but for the determination of the jury, in the light of the evidence that might be adduced to show the circumstances and conditions surrounding the plaintiff when he was put under the duty of taking further action. In view of this consideration, it seems plain that it was not for the court to confine the inquiry as to the terms upon which a similar contract could have been secured to the time of the loss of the contract sought to be concluded by the message, or within any fixed period after that day. This being true, we are of opinion that the court erred in sustaining the objection to the question above quoted. The plaintiff was entitled to elicit the evidence called for by that question. With such evidence before them, the jury could have based their finding of the damages to which the plaintiff was entitled for his loss of the bargain upon

the price of the commodity in question shown by the ev-
idence to have been prevailing at the time at which, in
the light of proper instructions to them on the subject,
they might have found from the evidence that the plain-
tiff, by the exercise of due diligence, could have secured
a similar contract for the future delivery of the like
quantity and quality of cotton seed meal.

What has been said sufficiently indicates what is re-
garded as the scope which properly may be permitted
to be given to the inquiry sought to be prosecuted by
the questions to which objections were sustained, and
renders unnecessary a consideration of the rulings
made in sustaining objections to questions other than
the one above quoted.

Reversed and remanded.

## Failure to Deliver Telegram.

