HANS HANSON, Appellee, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

**Evidence:** MARKET VALUE: COMPETENCY OF WITNESS. A farmer who has occasion to purchase and sell cattle to some extent, and who accompanied a cattle buyer in a joint effort to purchase cattle at the lowest possible price, though engaged chiefly in raising grain, was competent to testify to the market value of cattle in the community in which he lived.

**Same.** A stock buyer who had visited the vicinity many times and purchased many cattle, and at the time in question sought to purchase cattle from numerous farmers in the locality, was also competent to testify to their market value at that time and place, although he did not reside in that community.

**Telegraphs and telephones:** DELAY IN DELIVERY: MEASURE OF DAMAGES. Plaintiff was offered cattle at a certain price if taken by a stated day, and telegraphed his son to buy them in time for the message to have been delivered before expiration of the time for purchase, but the telegram was not delivered until two days later. Immediately upon learning that the telegram was thus delayed he saw the seller who refused to sell except at an advanced price, and he then bought from others at the advanced market price. *Held,* that the measure of damage for failure to deliver the message in time was the difference between the price offered and the price he was required to pay.

**Same:** EVIDENCE. Evidence that when plaintiff saw the seller after his offer to sell the cattle had expired he refused to perform his offer, was admissible on the question of diligence, in reducing his loss; but his testimony that the cattle would have been delivered at the agreed price if his offer had been accepted in time was inadmissible as hearsay, but was without prejudice in view of the fact that the evidence to that effect was undisputed.

*Appeal from Harrison District Court.*—HON. E. B. WOOD-RUFF, Judge.

TUESDAY, APRIL 7, 1914.

ACTION for damages for negligent delay in transmitting a telegram from Dunlap, Iowa, to Streeter, N. D., resulting in loss to the plaintiff of an offer of sale of cattle which the plaintiff desired to purchase. There was a verdict for the plaintiff and the defendant appeals.—*Affirmed.*

*George H. Fearons* and *Saunders & Stuart,* for appellant.

*M. B. Bailey* and *J. H. Roadifer,* for appellee.

EVANS, J.—The plaintiff resided at Dunlap, Iowa. His son, Peter Hanson, resided near Streeter, N. D. The plaintiff was desirous of purchasing cattle in the neighborhood of Streeter for the purpose of shipping to Dunlap, and had had

some correspondence with his son in relation thereto. About March 1, 1911, the plaintiff received from his son the following letter: "I will write you a few lines in regard to the cattle. I seen the man today, and he has got sixty head of steers that will weigh 700 pounds, and will take $4.25 per hundred. He will ship March 3d, and, if you want the cattle at that price, wire me at once, or come up here and buy them yourself. I will close."

He immediately delivered to the defendant company the following reply telegram for transmission: "Dunlap, Iowa, March 1st, 3 P. M. Peter Hanson, Streeter, North Dakota. I will come on first train; hold the cattle until I get there if you can; if not, buy them at four and quarter or less. Hans Hanson."

The offer of sale which Peter had was from one Wentz, and was to be accepted on or before March 2d. The telegram was not delivered at Streeter until the afternoon of March 4th. Shortly after the delivery of the telegram to the defendant at Dunlap, the plaintiff took a train for Streeter and arrived there at about 9 o'clock p. m. of March 3d. On March 4th, and before the arrival of his telegram, the plaintiff and his son went to the home of Wentz, who lived seven miles distant, for the purpose of buying the cattle in question. Wentz, however, had already sold a part of the cattle on the day previous, and held the remainder at the advanced price of $4.70, instead of $4.25. The plaintiff and his son spent that day and one or two days following going from farm to farm in an effort to purchase an equal number of cattle. They were unable to buy any at a less price than at $4.70 per hundred. They did buy the required number at that price. The larger number were bought from Wentz, and these were a part of the sixty head included in the first offer. The measure of damages claimed is the difference between $4.70 and $4.25 per hundred for sixty head of cattle of 700 pounds weight. The evidence on behalf of the plaintiff is undisputed; the defendant offering no evidence. Many assign-

ments of error are made in appellant's brief. These may be grouped into a few divisions.

I. The first group of alleged errors challenges the competency of Peter Hanson to testify to the market value of cattle on March 4th, 5th and 6th in and about Streeter, N. D.

1. EVIDENCE: market value: competency of witness.

Peter was not in the cattle business. He was a farmer operating a farm of eight hundred acres, which was mostly devoted to the raising of grain for sale. Like all farmers, however, he had occasion both to purchase and to sell cattle to some extent. He accompanied his father in their joint effort to purchase cattle for the lowest possible price. If the market value of cattle in a rural community cannot be ascertained in this way by a farmer in such community, appellant ought to have aided us with a suggestion of some better way. We think the testimony of Peter on this question was clearly admissible, and that the objection to his competency was properly overruled.

The second group of errors challenges the competency of the plaintiff to testify to the market value. The plaintiff was not a resident of Streeter, but was a resident of Dunlap,

2. SAME.

Iowa. He was an experienced stock buyer. He had visited Streeter and vicinity many times, and had previously bought hundreds of cattle in such vicinity. He had last been there about six months previous to his March trip. In the light of his investigation and experience on March 4th, 5th and 6th, we think it very clear that his testimony was also admissible, and that the objection to its competency was properly overruled.

II. It is urged by appellant that, inasmuch as the offer of sale by Wentz expired on March 2d, the measure of damages was controlled by the state of the market on that day,

3. TELEGRAPHS AND TELEPHONES: delay in delivery: measure of damages.

and that the amount of defendant's liability became fixed on such date. It is urged that there is no evidence to show what the market was on March 2d. Even though it were conceded that the rule contended for by appellant might be

applicable in some cases, it is not applicable to the facts presented in the case at bar. Plaintiff was not intending to purchase these cattle for the purpose of a resale in the same market place. The plaintiff had no knowledge of the failure of the defendant to deliver his telegram until he arrived at Streeter at 9 o'clock p. m. March 3d. On the morning of March 4th he proceeded at once in his effort to save himself from injury consequent upon defendant's negligence. That he used all diligence in that regard is undisputed. As a matter of law, he was entitled to pursue this course, and to measure his damage thereby. His telegram instructed Peter to buy the cattle. He had a right to rely upon the prompt delivery of the message. He did not know to the contrary until the night of March 3d. His first opportunity, therefore, to recoup his damage was on March 4th. To say, upon such a state of facts, that the liability of the defendant company was fixed by the market on the night of March 2d is quite beside the mark. The appellant's counsel places special reliance on the case of *Brewster v. W. U. T. Co.*, 65 Ark. 537 (47 S. W. 560), as presenting a case almost identical in its facts. They present to us the following quotation from the opinion in that case:

Now, the contract which plaintiffs claim to have made with Langly gave them an option to accept and purchase a lot of cattle owned by him at $12 per head, this option to expire at noon on the 14th day of May, 1895. If the telegram had been received in due time, and plaintiffs had accepted the offered purchase, they would at that time have owned the cattle, and would have paid out the contract price thereon. The telegram was delivered on the same day, but not until 7 o'clock p. m., some hours after the time allowed for the acceptance of the contract had expired, so plaintiffs lost the right to purchase the cattle, but retained the money they agreed to pay for the same. It is manifest, therefore, that the plaintiffs were not injured, unless on the 14th day of May, *at the time the telegram was delivered,* the market value of cattle of the grade purchased was at that place greater than the contract price, or unless, on account of the scarcity

of cattle, *or for some other reason plaintiffs could not, by the use of due diligence, after the delivery of the telegram, have purchased the like number and grade of cattle for the contract price.* . . . It is a matter of no moment that some days subsequent to the delivery of the telegram there was a rise in the market value of cattle, and that, if plaintiffs had purchased cattle at the contract price, they might have obtained profits from such rise in value, for the law does not permit the recovery of such uncertain and speculative damages.

The italics are ours. The italicized portion quite covers the case at bar, and distinguishes its facts from those of the cited case.

What we have here said disposes, also, of the objection to the ninth instruction, because it failed to specify the market of March 2d as the market to be considered by the jury.

III. The only other error argued by appellant relates to certain alleged conversation between the plaintiff and Wentz. Over all appropriate objection by the appellant, the plaintiff

4. SAME: evidence.

testified to his conversation with Wentz as follows: "Q. What did he say with reference to those thirty-five head he had left? (Objected to as hearsay, incompetent, immaterial, and irrelevant. Overruled. Exception.) A. We had a talk with him, and he said he could get us fifty or sixty head at $4.70, but not at $4.25. He said he wouldn't deliver those he had on hand at $4.25. He said he did not get the message—he didn't have to keep his word, he said, because he didn't get the telegram. Q. What did he say, if anything, as to what he would have done? (Objected to as hearsay, incompetent, and immaterial. Overruled. Exception.) A. He said he would have delivered the cattle at $4.25."

As to the first of the above answers, we think it was properly admissible on the question of due diligence exercised by plaintiff to avoid or reduce his damage.

As to the second answer, it was hearsay, and objectionable on that ground. In the light of the entire record, how-

ever, it was clearly nonprejudicial. As already indicated the evidence on behalf of plaintiff was undisputed. It would permit of no other inference than that Peter could have bought the cattle up to the night of March 2d for the offered price. Such fact was one which in its very nature could not have been established except by inference. Testimony by Wentz to that effect would have been appropriate; but it would have been only an inference even then. We think that the error at this point, in the light of the whole record, is too trivial to justify a reversal. The defendant's negligence was gross. The plaintiff's case is meritorious and definite, and practically undisputed.

The judgment below was right and is accordingly —*Affirmed.*

LADD, C. J., and WEAVER, GAYNOR, and PRESTON, JJ., concur.